[No. 23749. Department One. June 20, 1932.]

SAM BAXTER, *Appellant*, v. FORD MOTOR COMPANY *et al., Respondents.*[1]

[1]Reported in 12 P. (2d) 409.

*Smith & Davies,* for appellant.

*Battle, Hulbert & Helsell* and *Whittemore & Truscott,* for respondent Ford Motor Company.

*Shank, Belt, Fairbrook & Rode* and *Hull & Murray,* for respondent St. John Motors.

HERMAN, J.—During the month of May, 1930, plaintiff purchased a Model A Ford town sedan from defendant St. John Motors, a Ford dealer, who had acquired the automobile in question by purchase from defendant Ford Motor Company. Plaintiff claims that representations were made to him by both defendants that the windshield of the automobile was made of non-shatterable glass which would not break, fly or shatter.

October 12, 1930, while plaintiff was driving the automobile through Snoqualmie pass, a pebble from a passing car struck the windshield of the car in question, causing small pieces, of glass to fly into plaintiff's left eye, resulting in the loss thereof. Plaintiff brought this action for damages for the loss of his left eye, and for injuries to the sight of his right eye. The case came on for trial, and, at the conclusion of plaintiff's testimony, the court took the case from the jury and entered judgment for both defendants. From that judgment, plaintiff appeals.

Appellant's first assignment of error is: The court erred in allowing the respondents to introduce in evidence, over the objection of appellant, the written contract of agency between the respondents. An investigation of the record discloses that A. C. St. John, the president of St. John Motors, was called as a wit-

458

ness by appellant's counsel, and was questioned with reference to his relationship with respondent Ford Motor Company. On cross-examination by counsel for the Ford Motor Company, this contract was offered in evidence for the purpose of showing the relations between respondents. The ruling was correct.

■ The second assignment of error is that the court refused to admit in evidence certain catalogues and printed matter furnished by respondent Ford Motor Company to respondent St. John Motors for distribution and assistance in sales.

When the car was sold to appellant, a written purchase order was entered into between the seller and the purchaser. Ford Motor Company was not a party to this agreement. Certain reading matter was printed on the back of the purchase contract, which printing purported to tell what constituted the Lincoln Motor Company warranty and the Ford Motor Company warranty. There was nothing in connection with the sales agreement which indicates that either the Lincoln Motor Company warranty or the Ford Motor Company warranty there set forth was made to, or accepted by, appellant or any other person.

The instrument in question was devoid of any provision which would have given appellant the right to sue the Lincoln Motor Company or the Ford Motor Company, if privity of contract be a condition precedent to a suit predicated on misrepresentations perpetrated by a manufacturer upon the public, resulting in the sale of products put forth as possessing qualities which the victim of such misrepresentations later discovers, to his damage, were lacking. Hence, respondent Ford Motor Company cannot successfully maintain that, so far as appellant is concerned, its warranties to appellant were set forth in the purchase agreement between appellant and the respondent dealer.

So far as that respondent, St. John Motors, is concerned, the written contract limits its responsibility to appellant. The purchase order stated that it contained the entire contract, and there was contained therein the following agreement:

"It is further agreed that no warranty either express or implied is made by the dealer under this order or otherwise covering said car."

To have permitted the introduction of the testimony in question as against respondent St. John Motors, would have been to have countenanced an attempt to vary the terms of the written instrument by parol testimony. Such evidence was not competent against respondent St. John Motors, and there was not sufficient evidence against that respondent to justify submission of the cause to the jury. Judgment was properly entered for respondent St. John Motors.

The principal question in this case is whether the trial court erred in refusing to admit in evidence, as against respondent Ford Motor Company, the catalogues and printed matter furnished by that respondent to respondent St. John Motors to be distributed for sales assistance. Contained in such printed matter were statements which appellant maintains constituted representations or warranties with reference to the nature of the glass used in the windshield of the car purchased by appellant. A typical statement, as it appears in appellant's exhibit for identification No. 1, is here set forth:

"TRIPLEX SHATTER-PROOF GLASS WINDSHIELD. All of the new Ford cars have a Triplex shatter-proof glass windshield—so made that it will not fly or shatter under the hardest impact. This is an important safety factor because it eliminates the dangers of flying glass —the cause of most of the injuries in automobile accidents. In these days of crowded, heavy traffic, the use of this Triplex glass is an absolute necessity. Its

extra margin of safety is something that every motorist should look for in the purchase of a car—especially where there are women and children.''

Respondent Ford Motor Company contends that there can be no implied or express warranty without privity of contract, and warranties as to personal property do not attach themselves to, and run with, the article sold.

*Mazetti v. Armour & Co.*, 75 Wash. 622, 135 Pac. 633, Ann. Cas. 1915C 140, 48 L. R. A. (N. S.) 213, was a case brought against Armour & Co. by proprietors of a restaurant. The complaint alleged that, in the course of their business, they purchased from the Seattle Grocery Company a carton of cooked tongue, relying upon the representations of Armour & Co. that its goods were pure, wholesome and fit food for human beings; that, in the center of the carton, was a foul, filthy, nauseating and poisonous substance; that, during the due course of trade, plaintiffs served one of their patrons a portion of the tongue, the customer ate of it, became sick and nauseated, and proceeded publicly to denounce service of such foul and poisonous food; that the incident became generally known; that plaintiffs had no knowledge of or means of learning the character of the food served; that its condition could not be discovered until it was served for use; and that, as a result thereof, plaintiffs were damaged. The trial court sustained a demurrer to the complaint. In the course of an opinion reversing the case, the court said:

''It has been accepted as a general rule that a manufacturer is not liable to any person other than his immediate vendee; that the action is necessarily one upon an implied or express warranty, and that without privity of contract no suit can be maintained; that each purchaser must resort to his immediate vendor. To this rule, certain exceptions have been recognized;

(1) Where the thing causing the injury is of a noxious or dangerous kind; (2) where the defendant has been guilty of fraud or deceit in passing off the article; (3) where the defendant has been negligent in some respect with reference to the sale or construction of a thing not imminently dangerous. . . .

"Although the cases differ in their reasoning, all agree that there is a liability in such cases irrespective of any privity of contract in the sense of immediate contract between the parties. . . .

"To the old rule that a manufacturer is not liable to third persons who have no contractual relations with him, for negligence in the manufacture of an article, should be added another exception—not one arbitrarily worked by the courts—but arising, as did the three to which we have heretofore alluded, from the changing conditions of society. An exception to a rule will be declared by courts when the case is not an isolated instance, but general in its character and the existing rule does not square with justice. Under such circumstances, a court will, if free from the restraint of some statute, declare a rule that will meet the full intendment of the law. No case has been cited that is squarely in point with the instant case, but there is enough in the adjudged cases to warrant us in our conclusion. . . .

"We would be disposed to hold on this question that, where sealed packages are put out and it is made to appear that the fault, if any, is that of the manufacturer, the product was intended for the use of all those who handle it in trade as well as those who consume it."

In the case at bar, the automobile was represented by the manufacturer as having a windshield of non-shatterable glass "so made that it will not fly or shatter under the hardest impact." An ordinary person would be unable to discover by the usual and customary examination of the automobile whether glass which would not fly or shatter was used in the windshield. In that respect, the purchaser was in a position similar to that

of the consumer of a wrongly labeled drug, who has bought the same from a retailer, and who has relied upon the manufacturer's representation that the label correctly set forth the contents of the container. For many years, it has been held that, under such circumstances, the manufacturer is liable to the consumer, even though the consumer purchased from a third person the commodity causing the damage. *Thomas v. Winchester,* 6 N. Y. 397, 57 Am. Dec. 455.

The rule in such cases does not rest upon contractual obligations, but rather on the principle that the original act of delivering an article is wrong, when, because of the lack of those qualities which the manufacturer represented it as having, the absence of which could not be readily detected by the consumer, the article is not safe for the purposes for which the consumer would ordinarily use it.

The vital principle present in the case of *Mazetti v. Armour & Co., supra,* confronts us in the case at bar. In the case cited, the court recognized the right of a purchaser to a remedy against the manufacturer because of damages suffered by reason of a failure of goods to comply with the manufacturer's representations as to the existence of qualities which they did not in fact possess, when the absence of such qualities was not readily discoverable, even though there was no privity of contract between the purchaser and the manufacturer.

Since the rule of *caveat emptor* was first formulated, vast changes have taken place in the economic structures of the English speaking peoples. Methods of doing business have undergone a great transition. Radio, bill boards and the products of the printing press have become the means of creating a large part of the demand that causes goods to depart from factories to the ultimate consumer. It would be unjust to recognize

a rule that would permit manufacturers of goods to create a demand for their products by representing that they possess qualities which they, in fact, do not possess; and then, because there is no privity of contract existing between the consumer and the manufacturer, deny the consumer the right to recover if damages result from the absence of those qualities, when such absence is not readily noticeable.

"An exception to a rule will be declared by courts when the case is not an isolated instance, but general in its character and the existing rule does not square with justice. Under such circumstances, a court will, if free from the restraint of some statute, declare a rule that will meet the full intendment of the law." *Mazetti v. Armour & Co.*, 75 Wash. 622, 135 Pac. 633.

We hold that the catalogues and printed matter furnished by respondent Ford Motor Company for distribution and assistance in sales (appellant's exhibits for identification Nos. 1, 2, 3, 4 and 5) were improperly excluded from evidence, because they set forth representations by the manufacturer that the windshield of the car which appellant bought contained Triplex non-shatterable glass which would not fly or shatter. The nature of non-shatterable glass is such that the falsity of the representations with reference to the glass would not be readily detected by a person of ordinary experience and reasonable prudence. Appellant, under the circumstances shown in this case, had the right to rely upon the representations made by respondent Ford Motor Company relative to qualities possessed by its products, even though there was no privity of contract between appellant and respondent Ford Motor Company.

Appellant assigns as error rejection of the following offer to prove:

"We now offer to prove by the witness on the stand that he didn't know anything about shatter-proof glass

or any other kind of glass; that he had never been engaged in any occupation which would familiarize him with glass and know at all the difference between shatter-proof glass and any other kind of glass, and didn't know anything different at that time; that he didn't know anything about the composition or otherwise of Triplex shatter-proof windshields or Triplex shatter-proof glass; that he relied solely and wholly upon the representations made by St. John and Johnnie Delaney and what he read and saw in the catalogues from them, which have been offered in evidence; that he believed these representations to be true, and by reason of his belief in these representations, and by reason of these representations, he purchased on or about the 13th day of May, a Model A Ford town sedan.''

With the exception of so much of the offer as related to the representations of Mr. St. John and Johnnie Delaney (a salesman for respondent St. John Motors), the testimony contemplated by the offer to prove was relevant, and should have been received. While it is a matter of common knowledge that the difference between glass which will not fly or shatter and ordinary glass is not readily noticeable to a person of ordinary experience, nevertheless appellant was entitled to show an absence of familiarity with non-shatterable glass. His testimony would have tended to show that he had no experience which should have enabled him to recognize the glass in the windshield as other than what it was represented to be.

The trial court erred in taking the case from the jury and entering judgment for respondent Ford Motor Company. It was for the jury to determine, under proper instructions, whether the failure of respondent Ford Motor Company to equip the windshield with glass which did not fly or shatter, was the proximate cause of appellant's injury.

We have considered the other assignments of error, and find them to be without merit.

Reversed, with directions to grant a new trial with reference to respondent Ford Motor Company; affirmed as to respondent St. John Motors.

MILLARD, BEALS, and MAIN, JJ., concur.

ON REHEARING.

[*En Banc.* October 13, 1932.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adheres to the Departmental opinion heretofore filed herein. The judgment is therefore reversed, with directions to grant a new trial, with reference to respondent Ford Motor Company, and affirmed as to respondent St. John Motors.

