CLIFFORD N. HERBSTMAN, PLAINTIFF-RESPONDENT, v.
EASTMAN KODAK COMPANY, A CORPORATION, DE-
FENDANT-APPELLANT.

Argued April 29, 1975—Decided July 1, 1975.

(1)

*Mr. Edwin K. Large, Jr.* argued the cause for the appellant (*Messrs. Large, Scammell & Danziger,* attorneys; *Messrs. Stryker, Tams & Dill,* of counsel).

*Mr. Clifford N. Herbstman* argued the cause *pro se.*

The opinion of the court was delivered by

SCHREIBER, J. Clifford N. Herbstman, a member of the bar of this State who appeared *pro se,* filed a complaint in the Hunterdon County District Court in which he charged that the defendant Eastman-Kodak Company ("Kodak") sold him a new Kodak Pocket Instamatic No. 40 camera through a retail dealer, and that the defendant impliedly warranted the camera was merchantable and reasonably fit for the purposes for which it was to be used. In its answer the defendant denied the implied warranties and asserted that it had made an express warranty only to repair the camera within one year after purchase and had disclaimed any other warranties.

When the case came on for trial, the court saw no "real necessity for taking any testimony." Based on the colloquy among counsel and the trial court, it appears that the stipulation reached between the parties was as follows:

In October 1972 the plaintiff purchased a Kodak camera from Deuclers Pharmacy in Sussex, New Jersey. The camera was manufactured by the defendant. It was "sold through" Deuclers Pharmacy and thereafter purchased by the plaintiff. Within the camera package was a little catalogue. On the outside back page was a statement entitled "Warranty". The plaintiff was not aware of the "warranty" until after he took the camera home and unwrapped the package. Subsquently the plaintiff ascertained that the camera had a mechanical defect, namely, the film advance mechanism was jammed. The plaintiff thereafter purchased another Kodak Pocket Instamatic No. 40 camera.

The "warranty" and the two Kodak cameras were admitted into evidence.

On this record the District Court assumed that the Uniform Commercial Code applied. Turning to *N. J. S. A.* 12A:2–316 (3) (c) which provides that an "implied warranty can also be excluded . . . by course of dealing or course of performance or usage of trade", the trial court took judicial notice that the usage of trade "indicated that the camera can be returned for repair" and that the implied warranties were accordingly excluded. It opined that had the camera been returned for repair and then not satisfactorily serviced, as opposed to "simply buying another camera for the sake of convenience," the plaintiff would have had an appropriate action for damages. Since the plaintiff refused to return the camera for repair and the defendant never had the opportunity to fix it, the court dismissed the complaint without prejudice.

Subsequently, the trial court signed a judgment which, after referring to numerous facts not in the trial stipulation or in evidence, dismissed the complaint subject to the right of the plaintiff to return the camera to the defendant for

repair; if the defendant failed to repair or replace the camera, then the plaintiff might have a judgment for $68.19.

The parties enlarged the stipulation of facts before the Appellate Division. It was agreed that the plaintiff had opted for Kodak reliability and simplicity of operation as expressed in its "numerous advertising campaigns." Plaintiff had purchased the camera to use on a trip in Israel. Before the trip the camera performed satisfactorily when he shot a roll of film. However, in Israel the film advance mechanism jammed after he took six photographs. After returning home plaintiff purchased the second camera and then asked Kodak to refund the purchase price of the first. Kodak refused, although it was willing to fix the camera.

The Appellate Division determined that the issue was whether the plaintiff was bound by the defendant's attempt to limit the remedies available to him for breach of warranty under the Uniform Commercial Code. It held that no effective limitation was made and that the plaintiff was entitled to the remedy of returning the defective camera for a cash refund.

We granted the defendant's petition for certification. 67 *N. J.* 94 (1975).

The issues have been obfuscated because of the inadequate trial record and the positions taken by the parties. At the oral argument before this Court the plaintiff asserted that he did not claim that there was a manufacturing defect in the camera and that he had read and understood the "warranty". The plaintiff stated he "wanted to pick a fight with Kodak" because it would not pay him the price he had paid Deuclers Pharmacy for the camera.

The plaintiff's theory is that the manufacturer had impliedly warranted the merchantability and fitness of the camera even though there was no defect when it left the manufacturer or the seller, and that the implied warranty arose because Kodak had manufactured and sold the camera or because of the "warranty" on the booklet he found enclosed in the camera package. It read in part as follows:

We will repair your camera at no charge within one year after purchase, except for damage caused by accident or abuse. This warranty applies only to the camera itself, and Kodak cannot be responsible for other losses or damages of any kind resulting from equipment failure.

For picture-making help write to Eastman Kodak Company, Photo Information, 343 State Street, Rochester, New York, 14650. For service on your camera during or after the warranty period, contact your dealer in Kodak products for assistance or send your camera to one of the Kodak Equipment Service Centers listed on page 24. A note enclosed with the equipment giving details and date of purchase will help us to get it back to you promptly.

Except as mentioned above, no other warranty, express or implied, applies to this camera.

Eastman Kodak Company

The plaintiff's rationale with respect to the express warranty seems to be that, since the defendant agreed to repair the camera within one year after purchase, it impliedly warranted the camera was fit for use and merchantable during that period. The plaintiff contends that upon breach he was entitled to a refund of the purchase price paid to Deuclers Pharmacy even though Kodak was not given the opportunity to repair it.

■ Responsibility of a manufacturer to a consumer purchaser for economic losses, as opposed to personal injury or property damage claims, due to defective products, may arise in three ways: under the doctrine of strict liability, the Uniform Commercial Code, or by agreement between the parties.

■ ■ At oral argument the plaintiff expressly disavowed reliance upon the doctrine of strict liability in tort. This principle was initially declared in *Henningsen v. Bloomfield Motors, Inc.*, 32 *N. J.* 358 (1960), in terms of an implied warranty of reasonable suitability of the article for its intended use. In *Santor v. A & M Karagheusian, Inc.*, 44 *N. J.* 52 (1965), we renamed that concept strict liability in tort. It is founded on the premise that when the manufacturer presents his goods to the public for sale, he represents they are suitable for their intended use. To invoke this doctrine it is essential to prove that the product was defective when

placed in the stream of commerce. *Moraca v. Ford Motor Co.*, 66 *N. J.* 454 (1975) ; *Scanlon v. General Motors Corp.*, 65 *N. J.* 582, 590 (1974) ; *Jakubowski v. Minnesota Mining and Manufacturing*, 42 *N. J.* 177, 182 (1964). Since the plaintiff did not prove that the defect existed when the manufacturer or even the pharmacy sold the camera, a cause of action predicated upon strict liability is not maintainable.

The plaintiff relies upon two provisions of the Uniform Commercial Code, namely, *N. J. S. A.* 12A:2–314(1) and 12A:2–314(2) (c). These sections provide that unless excluded or modified a warranty that the goods shall be merchantable is implied in a contract for sale, and that to be merchantable goods must be fit for the ordinary purpose for which such goods are used.

■ There are numerous difficulties with respect to the plaintiff's Code contentions. First, the implied warranties referred to in the Code contemplate that the defect or condition which causes nonmerchantability or nonfitness existed at the time the seller transferred the product. Hursh & Bailey in *American Law of Products Liability* § 3.7 at 436 (2d ed. 1974) state :

"It is a general rule that a manufacturer's or seller's implied or express warranty respecting his product has reference to the product's condition at the time it left the possession or control of the warrantor."

White and Summers, in their treatise *Uniform Commercial Code* § 9.6 at 286 (1972) write :

". . . Under 2–314, a plaintiff must prove (1) that a merchant sold goods, (2) which were not 'merchantable' at the time of sale, and (3) injury and damages to the plaintiff or his property (4) caused proximately and in fact by the defective nature of the goods, and (5) notice to seller of injury."

The requirement that a defect exist when the product leaves the manufacturer is identical to that referred to above in connection with strict liability.

Second, the plaintiff insists that his purchase price be refunded — not from the seller of the camera, but from its manufacturer. *N. J. S. A.* 12A:2–608 of the Code provides that a buyer may revoke his acceptance of a "commercial unit whose non-conformity *substantially impairs* its value to him if he has accepted it . . . without discovery of such non-conformity . . ." (Emphasis supplied). Revocation results in rescission of the transaction.

■■ Under principles of contract law, rescission was not warranted unless the contractual breach was material. 12 *Williston, Contracts* § 1455 at 14 (3d ed. 1970) ; 5 *Corbin, Contracts* § 1104 at 562 (1964) ; *Miller and Sons Bakery Co., Inc. v. Selikowitz,* 4 *N. J. Super.* 97 (App. Div. 1949). The Code has restated materiality in terms of substantial impairment of value to the buyer. *New Jersey Study Comment* 3 to *N. J. S. A.* 12A:2–608. See *Zabriskie Chevrolet, Inc. v. Smith,* 99 *N. J. Super.* 441, 453-454 (Law Div. 1968). The requirement that there must be substantial impairment of value before the buyer may revoke acceptance precludes revocation for trivial defects or defects which may be easily corrected. *Rozmus v. Thompson's Lincoln-Mercury Co.,* 209 *Pa. Super.* 120, 224 A. 2d 782 (1966). Whether there has been a substantial impairment is based upon an objective factual evaluation rather than upon a subjective test of whether the buyer believed the value was substantially impaired. *Hays Merchandise, Inc. v. Dewey,* 78 *Wash.* 2d 343, 474 P. 2d 270 (1970).

■ The plaintiff has failed to establish a substantial impairment of the value of the camera. There is an utter absence of proof that the jammed film advance mechanism involved a minor or major repair, the cost of such repair, and the effect of that defect on the value of the camera.

■ Third, New Jersey has not applied the Sales chapter of the Uniform Commercial Code, *N. J. S. A.* 12:2–101 *et seq.,* to transactions between a manufacturer and a purchaser of that product from some third person who is not the manufacturer's servant, agent or employee. Justice Hall, in

*Heavner v. Uniroyal, Inc.*, 63 *N. J.* 130, 150 (1973), commented that the Uniform Commercial Code was drawn not having "anything in mind but a contract between a 'seller' and his immediate 'buyer'". See *Prosser, Law of Torts* § 97 at 655 (4th ed. 1971).

It is important to remember that the strict liability in tort concept which has at times been mouthed in terms of warranty is not that referred to in the Code. *Rosenau v. City of New Brunswick and Gamon Meter Co.*, 51 *N. J.* 130, 141 (1968). Prosser in his article "Spectacular Change: Products Liability in General," 36 Cleveland *B. A. J.* 149, 167–168 (1965), wrote:

> . . . It has been said over and over again that this warranty — if that is the name for it — is not the old sales warranty, it is not the warranty covered by the Uniform Sales Act or the Uniform Commercial Code. It is not a warranty of the seller to the buyer at all, but it is something separate and distinct which sounds in tort exclusively, and not at all in contract; which exists apart from any contract between the parties; and which makes for strict liability in tort.

The *Restatement, Torts* 2d (1965) in its comment to § 402A, "Special Liability of Seller of Product for Physical Harm to User or Consumer," points out that the strict liability rule

> . . . is not governed by the provisions of the Uniform Sales Act, or those of the Uniform Commercial Code, as to warranties; and it is not affected by limitations on the scope and content of warranties, or by limitation to 'buyer' and 'seller' in those statutes. Nor is the consumer required to give notice to the seller of his injury within a reasonable time after it occurs, as is provided by the Uniform Act. The consumer's cause of action does not depend upon the validity of his contract with the person from whom he acquires the product, and it is not affected by any disclaimer or other agreement, whether it be between the seller and his immediate buyer, or attached to and accompanying the product into the consumer's hands. In short, 'warranty' must be given a new and different meaning if it is used in connection with this Section. It is much simpler to regard

the liability here stated as merely one of strict liability in tort. (At 356).

We have sanctioned recovery under the principle of strict liability for the economic loss of the bargain as well as for personal injuries and property damage flowing from accidents. *Santor v. A. & M. Karagheusian, Inc., supra.* Some jurisdictions, such as California, have preferred to justify recovery for loss of the bargain by the purchaser from the manufacturer under the Uniform Commercial Code. *Seely v. White Motor Company,* 63 *Cal.* 2d 9, 45 Cal Rptr. 17, 403 P. 2d 145 (1965). See analysis in Comment, "Manufacturers' Liability to Remote Purchasers for 'Economic Loss' Damages — Tort or Contract?", 114 *U. Pa. L. Rev.* 539 (1966) ; Note, "Economic Loss in Products Liability Jurisprudence," 66 *Colum. L. Rev.* 917 (1966) ; Comment, "The Vexing Problem of the Purely Economic Loss in Products Liability : An Injury in Search of a Remedy," 4 *Seton Hall L. Rev.* 145 (1972). By what we say today we do not mean to foreclose the possibility that there may be circumstances under which a purchaser may recover from a manufacturer for economic losses under either strict liability or the Code. *Cf. Collins v. Uniroyal,* 64 *N. J.* 260 (1974), where a suit under the Code and for strict liability was maintained in an action between the buyer and manufacturer.

It should be noted that the plaintiff is not relying upon any express representation or warranty made by Kodak in its advertising. It may well be that a good cause of action could be predicated on such representation. *Baxter v. Ford Motor Co.,* 168 *Wash.* 456, 12 *P.* 2d 409, *aff'd on rehearing* 168 *Wash.* 465, 15 *P.* 2d 1118 (1932) ; *Restatement, Torts* 2d § 402B. The plaintiff never produced any of the defendant's advertising literature and does not rely on any statements expressed in that advertising.

The plaintiff was not aware of the printed "warranty" or its terms prior to or at the time of the purchase. At most the "warranty" obligated Kodak to repair the

"camera at no charge within one year after purchase".[1] The "warranty" as to the camera's future condition was limited to that obligation. We do not agree with the Appellate Division that Kodak's express "warranty" was that the camera would be free of mechanical defects. Rather, the language used contemplated that such defects might occur and, if so, Kodak would repair them. See *Courtesy Ford Sales, Inc. v. Farrior*, 53 Ala. App. 94, 298 *So.* 2d, 26 (Ct. Civ. App.), *cert.* den. 292 *Ala.* 718, 298 *So.* 2d 34 (1974). The plaintiff had read the "warranty" and had the same understanding, *viz.*, that Kodak's express statement was only to repair the camera. Where both parties have the same understanding of the language, then it must be deemed to be clear and unambiguous. 3 *Corbin, Contracts*, §538 at 59–61 (1960). It might be noted that the complaint and plaintiff's brief relied solely on implied warranties.

 Our interpretation of the language used not only accords with its obvious meaning, but also with the principle that guarantees of future performance should be specific. The general rule has been expressed by Hursh & Bailey in *American Law of Products Liability, supra*, § 3.7 at 437:

> "Of course, the circumstances can be such that the seller will make a warranty as to the future condition or future performance of the article sold, as by guaranteeing the article for a stated period of time. It would seem, however, that such a warranty of future condition or performance must be explicit."

---

[1]Under the recently enacted Magnuson-Moss Warranty — Federal Trade Commission Improvement Act, 15 *U. S. C.* § 2301 *et seq.*, *P. L.* 93–637, January 4, 1975, a warrantor, who is any person who gives a written warranty or may be obligated under an implied warranty arising under State law, must meet certain Federal minimum standards including the obligation to remedy a defect without charge and after a reasonable number of attempts to remedy the defect, the warrantor must permit the consumer to elect a refund for or replacement without charge of the product. Section 104(a)(1) and (4). The act does not apply to consumer products manufactured before January 4, 1975. Section 112(a).

We do not find that the express "warranty" extended implied warranties of merchantability and fitness with respect to defects which might arise during the one year period after the plaintiff purchased the camera. Nor is there any support for the proposition that implied warranties required by the Code attach to representations made by a manufacturer subsequent to sale.

Kodak in its answer and before this Court has adhered to the position that it is willing to accept the return of the camera so as to repair it. A judgment will be entered providing that the plaintiff may deliver the camera to Kodak for repair within 30 days from the date of an appropriate order.

The judgment of the Appellate Division is reversed and the matter remanded to the District Court for entry of an order in accordance with this opinion.

CONFORD, P. J. A. D., Temporarily Assigned (concurring). I agree in principle with the result the Court reaches here, but I believe that doctrinal consistency in the Court requires greater emphasis on the now firmly established rule in this State that the remedy of the ultimate purchaser against the manufacturer for defective products is *via* the doctrine of strict liability in tort rather than through the sales chapter of the Uniform Commercial Code. The gloss recently applied in *Heavner v. Uniroyal, Inc.,* 63 *N. J.* 130, 147–155 (1973) to the break-through decisions in *Henningsen v. Bloomfield Motors, Inc.,* 32 *N. J.* 358 (1960), and *Santor v. A. & M. Karagheusian, Inc.,* 44 *N. J.* 52 (1965), leaves no doubt that the Court regards the Code technicalities as more or less irrelevant in this area and that the principle of strict liability in tort is as much applicable where the purchaser's injury is only economic or as a loss of bargain as where injury to the person or to property results from the breach of the implied warranty of reasonable fitness for

use postulated by the doctrine. *Heavner, supra,* 63 *N. J.,* at 147.[1]

The foregoing comprehensive principle is subject to modification, in favor of the purchaser, if there is an express warranty from the manufacturer to him giving him more rights than would the doctrine of strict liability, see *Collins v. Uniroyal,* 64 *N. J.* 260 (1974); but the manufacturer cannot contract the purchaser's rights by a "warranty" or document of that general description. *Henningsen, supra,* 32 *N. J.* at 404; *Heavner, supra,* 63 *N. J.* at 154–155.

Having these guiding principles in mind, I would approach the matter of plaintiff's rights in this case without regard to his frequent shifts of theoretical position from court to court, but on the merits of the case reflected by application of the law to the facts. This approach would also subserve the interests of the commercial and consuming communities in understanding their rights and obligations in this area.

As to the express "warranty" in the booklet accompanying the camera, it could not cut down plaintiff's right to a camera reasonably fit for use, under the authorities cited above. It was, however, effective to give him greater rights, i.e., to have the manufacturer make any needed repairs free within a year, whether or not the camera when sold was defective in the sense of the implied warranty of fitness which the law imposes under the rule of strict liability. Subject to the last statement, I agree with so much of the Court's opinion as holds the writing did not, although so held by the Appellate Division, give plaintiff an express warranty, with accompanying Code remedies, other than what the doctrine of strict liability gives him. Both the defendant and the trial court's judgment tendered plaintiff the free repair which the writing contemplates, and this Court in effect ratifies those offers. I

---

[1]The strong impact of *Heavner* lies not only in the deliberation with which the Court addressed the issue, but in the fact that *Henningsen, supra,* was decided before adoption in New Jersey of the Uniform Commercial Code, and *Heavner,* after.

concur, and for reasons hereinafter stated, think the plaintiff is entitled to no more (unless the repair is not effected).

Finally, there is the question whether the occurrence of the jammed film-advance mechanism of the camera constituted a defect on sale violative of the implied warranty, or whether a fact-finder could so reasonably find. If this question were answered in the affirmative, the further inquiry would arise as to whether plaintiff would be entitled to return of his purchase price, or be remitted to proof of his loss of bargain. With respect to both of these questions, it seems to me that the Court is necessarily remitted to the law of contracts or sales, by analogy, rather than the law of torts. The first question implicates the matter of performance, an area cognate to contract or sales principles; the second question, the field of damages akin to breach of contract, rather than damages akin to tort liability for injury to the person or to property. See *Santor, supra,* which would have given return of purchase price to the disappointed purchaser, by way of analogy to the Sales Act remedy, but for his continued use of the property after knowledge of breach. He was allowed only his loss of bargain. 44 *N. J.* at 68–69.

I am in agreement with that portion of the Court's opinion which holds that application of either the Code (*N. J. S. A.* 12A:2–608) or general contract principles precludes any right of rescission on the part of the purchaser and return of purchase price unless the alleged defect involves "substantial impairment of value" of the article sold. I would further hold that for purposes of the right of recovery for the purchase price, on the theory of a defect remediable under the doctrine of strict liability, a defect is not established unless there is a showing of such "substantial impairment of value." For a defect of less substance I would allow only the cost of repair or remit the purchaser to a seller's offer to repair, as here. This principle would be in harmony with the general expectation and understanding of the public in today's society that mass-produced articles may be expected to develop minor, relatively easily remediable malfunctions which sellers or

manufacturers routinely repair on demand during reasonable, stated periods of time.[2]

See *Rozmus v. Thompson's Lincoln-Mercury Co.,* 209 *Pa. Super.* 120, 224 *A.* 2d 782, 784 (1966); *Reece v. Yeager Ford Sales, Inc.,* 184 *S. E.* 2d 722, 725–726 (W. Va. Sup. Ct. of App. 1971); *Adams v. Peter Tramontin Motor Sales,* 42 *N. J. Super.* 313, 325 (App. Div. 1956). Compare the situation when the defect is substantial, even though repairable. *Zabriskie Chevrolet, Inc. v. Smith,* 99 *N. J. Super.* 441, 456–458 (Law Div. 1968). See Note, "Revocation of Acceptance: The Test for Substantial Impairment," 32 *U. Pitt. L. Rev.* 439 (1971).

I conclude that plaintiff has not established such a defect here as entitles him to recovery of the purchase price under the doctrine of strict liability. I do determine, however, that a fact-finder reasonably could, and should, find that the development of the defect in the film-advance mechanism so soon after the purchase established a minor defect in the camera at the time of sale such that, if plaintiff accepts the Court's judgment that the defendant repair the camera at its own expense and the defendant fails to do so satisfactorily within a reasonable time, the plaintiff ought to have judgment for the purchase price. Only to the latter extent would I modify the Court's conclusion as to remedy.

Pashman, J., and Conford, P. J. A. D., concurring in the result.

*For reversal*—Chief Justice Hughes, Justices Mountain, Sullivan, Pashman, Clifford and Schreiber and Judge Conford—7.

*For affirmance*—None.

-------

[2] I am, of course, not implying any such limitation of liability when even a minor defect is a proximate cause of personal injury.