180 N.J. Super. 45 (1981)
433 A.2d 801
GIUSEPPE VENTURA, PLAINTIFF-RESPONDENT,
v.
FORD MOTOR CORPORATION, DEFENDANT-APPELLANT, AND MARINO AUTO SALES, INC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 23, 1980.
Decided July 28, 1981.
*51 Before Judges BOTTER, KING and McELROY.
Richard F. Collier, Jr., argued the cause for appellant (Pitney, Hardin & Kipp, attorneys; Richard F. Collier, Jr., on the brief).
Mark Silber argued the cause for plaintiff-respondent.
No brief was filed for respondent Marino Auto Sales, Inc.
The opinion of the court was delivered by BOTTER, P.J.A.D.
Ford Motor Company (Ford) appeals from the final judgment in this action in which plaintiff, the purchaser of a new 1978 *52 Mercury Marquis Brougham, sued Ford's authorized dealer, Marino Auto Sales, Inc. (Marino Auto) and Ford, as manufacturer, for damages due to defects in the vehicle. Marino Auto cross-claimed against Ford for indemnification. The final judgment (a) granted plaintiff rescission of the purchase and damages of $6,745.59 against Marino Auto Sales (representing the purchase price of $7,847.49 less an allowance for plaintiff's use of the car and the sales tax), (b) awarded damages in favor of Marino Auto against Ford on the cross-claim in the sum of $2,910.59 (representing $6,745.59 less the resale value of the car), and (c) awarded counsel fees to plaintiff against Ford in the sum of $5,165. Plaintiff's demands for interest, punitive damages in excess of $2,000,000 and treble damages were denied. The trial court's published opinion was limited to the issue of counsel fees awarded under the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, 15 U.S.C.A. § 2301 et seq. 173 N.J. Super. 501 (Ch.Div. 1980).
Plaintiff took delivery of the automobile on April 12, 1978. According to the testimony of plaintiff and his wife, they experienced engine hesitation and stalling problems early in their use of the car which continued without interruption despite repeated attempts by Marino Auto to cure the problem. Stanley Bednarz, Ford's zone service manager and mechanical specialist who assists dealers in satisfying customers, inspected the vehicle on July 13, 1978 and recommended replacing the exhaust regulator valve. Plaintiff testified that he was told by Bednarz that there was nothing wrong with the car and he would "have to live with this one." Plaintiff also testified that later in July 1978 he returned to Marino Auto intending to ask Mr. Marino to take the car back if it could not be fixed but that he was prevented from doing so and was forcibly removed from the premises.
Before considering the points raised on this appeal we note the unusual procedural aspects of the trial in this case. In a nonjury case such as this, with Marino Auto cross-claiming against Ford for indemnification, the adjudication of any party's *53 rights normally would be withheld until all the evidence has been introduced by all parties. The evidence in support or in defense of a cross-claim may tend to buttress or refute plaintiff's claims. Particularly in products liability cases, where the dealer has an action over against the manufacturer, "it would seem to make sense procedurally to have the plaintiff's cause of action whenever possible adjudicated in one action against manufacturer and retailer." Newmark v. Gimbel's Inc., 54 N.J. 585, 600-601 (1969). In nonjury cases a single, uninterrupted trial should be the norm.
Nevertheless, on the trial date in this case, Marino Auto's attorney was unavailable. The trial judge in his discretion severed plaintiff's case against Marino Auto and ordered the case to proceed against Ford only, as authorized by R. 4:38-2. Ford's counsel did not object to this procedure. Ford's witnesses were present at the conclusion of plaintiff's case but, after the trial judge denied Ford's motion for judgment dismissing the claim against Ford, Ford elected to rest its case and renew its motion without introducing any evidence. In these circumstances we will not reverse the trial judge for ordering separate trials of plaintiff's claims against Ford and Marino Auto, and we reject Ford's contention that, "in retrospect," the severance order constituted prejudicial error. R. 1:7-2. Ford cannot now renounce the trial tactics which it intentionally employed. On the trial of Marino Auto's cross-claim against Ford, Ford introduced evidence on which it now relies to refute plaintiff's claim. That evidence, which is before us, is not conclusive and was available to Ford on the first day of trial. It should have been offered then in an effort to overcome plaintiff's proofs that the vehicle suffered from a substantial manufacturing defect.
We reject the contention that, lacking expert proof, plaintiff failed to establish that a defective mechanism for which Ford was responsible caused the engine to hesitate and stall. This conclusion could be reached by inferences from the evidence. See Moraca v. Ford Motor Co., 66 N.J. 454, 458-459 *54 (1975); Scanlon v. General Motors Corp., 65 N.J. 582, 592-593 (1974); Durfee v. Rod Baxter Imports, Inc., 262 N.W.2d 349 (Minn.Sup.Ct. 1977); Arnold v. Ford Motor Co., 90 N.M. 549, 551, 566 P.2d 98, 100 (Sup.Ct. 1977); Vernon v. Lake Motors, 26 Utah 2d 269, 274, 488 P.2d 302, 306 (Sup.Ct. 1971). The findings that Ford breached its express warranty and that the car was substantially impaired were supported by sufficient credible evidence and must be affirmed on appeal. Rova Farms Resort, Inc. v. Investors Ins. Co. of America, 65 N.J. 474, 483-484 (1974).
At the conclusion of plaintiff's case against Ford the trial judge announced his findings and conclusions that Ford had breached its warranty, that the car was substantially impaired because of persistent and continual stalling and hesitation, but that plaintiff had not proven damages against Ford. He held that the only remedy to which plaintiff was entitled was rescission or revocation of acceptance against Marino Auto, see N.J.S.A. 12A:2-608; Herbstman v. Eastman Kodak Co., 68 N.J. 1, 9-10 (1975), except that plaintiff would also have a claim for attorney's fees against Ford under the Magnuson-Moss Warranty Act, supra, 15 U.S.C.A. § 2310(d)(2). Various reasons were given for affording plaintiff the right to rescind the purchase and receive a refund of the purchase price from Marino Auto. At one point in his oral decision the trial judge alternatively relied upon the theory of strict liability in tort and breach of an implied warranty of merchantability and fitness. In his written opinion he stated that this result "pierced through the dealership system, granting rescission against the selling dealer Marino, based upon defects in breach of the manufacturer Ford's express warranty." 173 N.J. Super. at 504. He also said: "The only remedy under the Magnuson-Moss Warranty Act for Ford's violation of the act was rescission against the selling dealer Marino"; and he viewed Marino Auto as Ford's "authorized agent to remedy defects...." Id. Punitive damages against Ford were denied because of the absence of "deliberate, willful, malicious fraud or wanton and gross negligence or unconscionable commercial practice...." Thus, the case was continued to *55 permit plaintiff to claim a refund of the purchase price, less an allowance for the use of the car, on a rescission basis against Marino Auto, and to permit Marino Auto to claim indemnification against Ford. Ford was to be afforded the opportunity to defend by establishing Marino Auto's fault in failing properly to repair the auto.
On the next trial date Marino Auto stipulated the sale of the car to plaintiff and seemingly conceded at one point that plaintiff would be entitled to a judgment against Marino Auto based on the finding of Ford's breach of warranty on the proofs offered by plaintiff against Ford. The issues to be tried on the cross-claim were held to include damages to Marino Auto on rescission or revocation of acceptance, namely, the purchase price less the value of the car to be returned to the dealer, minus an allowance for the limited use of the car. (There was evidence that plaintiff was financially compelled to continue to use the vehicle in its imperfect state. Upon the seller's breach the buyer has the right to "cover" by acquiring substituted goods but is not barred from any other remedy if he fails to effect "cover." N.J.S.A. 12A:2-711 and 712. See also, N.J.S.A. 12A:2-711(3), which gives the buyer a security interest in and the right to retain or resell goods after revocation of acceptance.[1]) The case proceeded on the cross-claim although Ford contended that no claim over could arise until plaintiff recovered a judgment against Marino Auto. On the assumption that proof of Ford's breach of an express warranty established plaintiff's right to recover against Marino Auto, 173 N.J. Super. at 503-504, the trial judge ordered the trial to proceed on Marino Auto's indemnification claim. Proof of plaintiff's damage claim was also anticipated before a final judgment was to be entered on the complaint and cross-claim.
Proofs were presented by Ford to show that the car was not defective and that there could be other causes for *56 engine hesitation or stalling, such as contaminated fuel. Although Ford contends that Marino Auto was negligent in not checking the fuel system, there was no proof that contaminated fuel was the actual cause of the problem. Thus, there was no proof that the defect in the vehicle would have been discovered but for Marino Auto's lack of reasonable care in attempting to repair the car. Marino Auto cannot be denied indemnification because it failed to successfully diagnose the cause of the problem. Ford's expert could find nothing wrong with the car and, on the facts of this case, the trial judge could properly have rejected Ford's contention that Marino Auto was at fault for not correcting it, regardless of where the burden of proving Marino Auto's negligence was placed.
At the conclusion of this testimony Marino Auto contended that there was no proof of any wrongdoing by Marino Auto and no basis for rescission. However, Marino Auto also claimed indemnification from Ford for any damage award granted to plaintiff against Marino Auto. Ford contended that no judgment should be entered against Marino Auto, that there was no basis for rescission and therefore no need for indemnification. Ford also protested the lack of sufficient notice of plaintiff's complaints about the car's performance.
We have considered the merits of this appeal on the assumption that, although Marino Auto has not appealed the judgment against it, Ford can contend that no judgment should have been entered against Marino Auto. Ford has an interest in the judgment against Marino Auto since it was the basis for Ford's indemnification obligation. In fact, the trial judge did consider Ford's arguments against Marino Auto's liability to plaintiff.
Our reasoning through the body of law applicable to this commonplace contractual skein, which binds consumers, car dealers and manufacturers together, differs from that of the trial judge. But we affirm plaintiff's recovery. We conclude that, despite Marino Auto's attempted disclaimer of all warranties, plaintiff can recover from Marino Auto for the breach of *57 implied warranty of merchantability. We also uphold the award of counsel fees against Ford pursuant to the Magnuson-Moss Warranty Act.
The contract of sale between Marino Auto and plaintiff conspicuously[2] contained the following legend on its face:
The seller, MARINO AUTO SALES, Inc., hereby expressly disclaims all warranties, either expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose, and MARINO AUTO SALES, Inc., neither assumes nor authorizes another person to assume for it any liability in connection with the sale of the vehicle.
On the back of this sales order-contract were the following terms which were made part of the contract:
7. It is expressly agreed that there are no warranties, express or implied, made by either the selling dealer or the manufacturer on the motor vehicle, chassis or parts furnished hereunder except, in the case of a new motor vehicle the warranty expressly given to the purchaser upon the delivery of such motor vehicle or chassis.
The selling dealer also agrees to promptly perform and fulfill all terms and conditions of the owner service policy.
For the purpose of this opinion we will assume that the disclaimer of implied warranties of merchantability and fitness was effective under the Uniform Commercial Code, N.J.S.A. 12A:2-316. Since the dealer passed on to the purchaser a warranty from the manufacturer, we will not consider whether the attempted disclaimer by Marino Auto should be voided as unconscionable and contrary to public policy under N.J.S.A. 12A:2-302, even though such disclaimer could foreclose rescission or other remedies against the dealer and, without privity between buyer and manufacturer, rescission has been held ordinarily *58 unavailable under the Code against the manufacturer. Edelstein v. Toyota Motors Distributors, 176 N.J. Super. 57, 64 (App.Div. 1980); see Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 372-373, 406-408 (1960); Gladden v. Cadillac Motor Car Div., 83 N.J. 320, 330-331 (1980); Herbstman v. Eastman Kodak Co., supra, 68 N.J. at 9-10; cf. Santor v. A & M Karagheusian, Inc., 44 N.J. 52 (1965). N.J.S.A. 12A:2-316(1) provides that
... words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this Chapter on parol or extrinsic evidence (12A:2-202) negation or limitation is inoperative to the extent that such construction is unreasonable.
It may be argued that the dealer's conduct in transmitting Ford's warranty to plaintiff, the reference to such warranty in paragraph 7 on the back of the purchaser order-contract, and the undertaking "to promptly perform and fulfill all terms and conditions of the owner service policy," are inconsistent with a disclaimer of all warranties and that such a disclaimer is an unreasonable construction. See Gladden v. Cadillac Motor Car Div., supra, 83 N.J. at 330; Henningsen v. Bloomfield Motors, Inc., supra, 32 N.J. at 407-408; cf. Murray v. Holiday Rambler, Inc., 83 Wis.2d 406, 416, 265 N.W.2d 513, 519 (Sup.Ct. 1978). The contract in the Henningsen case contained the identical obligation to perform all terms and conditions of the owner service policy. Id. The combination of the dealer's undertaking and the automobile manufacturer's warranty was interpreted in Henningsen to rebut the disclaimer of implied warranty of merchantability by the dealer. The court held that the attempt to limit liability to the replacement of defective parts was contrary to public policy and void with respect to a claim for personal injuries resulting from an accident caused by defects in an automobile. However, we need not explore these issues further because the Magnuson-Moss Warranty Act has solved many of the problems posed by the intricacies confronting consumers under the preexisting law of sales.
*59 The Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, supra, was adopted on January 4, 1975, 88 Stat. 2183. Its purpose was to make "warranties on consumer products more readily understandable and enforceable." Note, 7 Rutgers-Camden L.J. 379 (1976). The act enhances the consumer's position by allowing recovery under a warranty without regard to privity of contract between the consumer and warrantor, by prohibiting the disclaimer of implied warranties in a written warranty, and by enlarging the remedies available to a consumer for breach of warranty, including the award of attorneys' fees. Id. The requirement of privity of contract between the consumer and the warrantor has been removed by assuring consumers a remedy against all warrantors of the product.[3] A consumer is defined in 15 U.S.C.A. § 2301(3) as follows:
(3) The term `consumer' means a buyer (other than for purposes of resale) of any consumer product, any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract).
A "supplier" is defined as any person engaged in the business of making a consumer product directly or indirectly available to consumers, § 2301(4), and a "warrantor" includes any supplier or other person who gives or offers to give a written warranty or who is obligated under an implied warranty. § 2301(5). The term "written warranty" is defined in § 2301(6) to include:
(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

*60 (B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking.
The Magnuson-Moss Warranty Act provides for two types of written warranties on consumer products, those described as "full" warranties and those described as "limited" warranties. 15 U.S.C.A. § 2303. The nature of the "full" warranty is prescribed by § 2304. It expressly provides in subsection (a)(4) that a consumer must be given the election to receive a refund or replacement without charge of a product or part which is defective or malfunctions after a reasonable number of attempts by the warrantor to correct such condition. For the breach of any warranty, express or implied, or of a service contract (defined in 15 U.S.C.A. § 2301(8)), consumers are given the right to sue for damages and "other legal and equitable relief" afforded under state or federal law, 15 U.S.C.A. § 2310(d); 15 U.S.C.A. § 2311(b)(1).
Appellant Ford contends that the trial judge improperly invoked § 2304 of the act as a basis for allowing "rescission" in the case since the warranty given by Ford was a limited warranty and not a full warranty. 15 U.S.C.A. § 2303(a)(2) provides that all warranties that do not meet federal minimum standards for warranty contained in § 2304 shall be conspicuously designated a "limited warranty." "Limited" warranties protect consumers by prohibiting disclaimers of implied warranties, § 2308, but are otherwise not described in the act. Note, supra, 7 Rutgers-Camden L.J. at 381. Clearly, Ford's warranty, which is quoted later in this opinion, was a limited warranty.
15 U.S.C.A. § 2308 provides as follows:
(a) No supplier may disclaim or modify (except as provided in subsection (b) of this section) any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product, or (2) at the time of sale, or within 90 days thereafter, such supplier enters into a service contract with the consumer which applies to such consumer product.
(b) For purposes of this chapter (other than section 2304(a)(2) of this title), implied warranties may be limited in duration to the duration of a written *61 warranty of reasonable duration, if such limitation is conscionable and is set forth in clear and unmistakable language and prominently displayed on the face of the warranty.
(c) A disclaimer, modification, or limitation made in violation of this section shall be ineffective for purposes of this chapter and State law.
We will first consider the application of this act to the dealer, Marino Auto. As quoted above, paragraph 7 of the purchase order-contract provides that there are no warranties, express or implied, made by the selling dealer or manufacturer except, in the case of a new motor vehicle, "the warranty expressly given to the purchaser upon delivery of such motor vehicle...." This section also provides: "The selling dealer also agrees to promptly perform and fulfill all terms and conditions of the owner service policy." Ford contended in the trial court that Marino Auto had "a duty" to properly diagnose and make repairs, that such duty was "fixed both by the express warranty ... which they passed on ... and by the terms of [paragraph 7 of the contract with plaintiff]" by which Marino Auto expressly undertook "to perform its obligations under the owner service policy." See 15 U.S.C.A. § 2310(f); 16 C.F.R. § 700.4 (1980). The provision in paragraph 7 in these circumstances is a "written warranty" within the meaning of § 2301(6)(B) since it constitutes an undertaking in connection with the sale to take "remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking...." In our view the specifications of the undertaking include, at the least, the provisions of the limited warranty furnished by Ford, namely:
LIMITED WARRANTY (12 MONTHS OR 12,000 MILES/19,312 KILOMETRES) 1978 NEW CAR AND LIGHT TRUCK
Ford warrants for its 1978 model cars and light trucks that the Selling Dealer will repair or replace free any parts, except tires, found under normal use in the U.S. or Canada to be defective in factory materials or workmanship within the earlier of 12 months or 12,000 miles/19,312 km from either first use or retail delivery.
All we require is that you properly operate and maintain your vehicle and that you return for warranty service to your Selling Dealer or any Ford or Lincoln-Mercury Dealer if you are traveling, have moved a long distance or need emergency repairs. Warranty repairs will be made with Ford Authorized Service or Remanufactured Parts.

*62 THERE IS NO OTHER EXPRESS WARRANTY ON THIS VEHICLE.[4]
The record does not contain a written description of the "owner service policy" which the dealer agreed to perform. Nevertheless, since Ford is the appellant here, we take its contentions at trial and documents in the record to establish the dealer's obligation to Ford and to plaintiff to make the warranty repairs on behalf of Ford (subject to the right of reimbursement or other terms that may be contained in their agreement). For the purpose of this appeal we are satisfied that the dealer's undertaking in paragraph 7 constitutes a written warranty within the meaning of 15 U.S.C.A. § 2301(6)(B). Accordingly, having furnished a written warranty to the consumer, the dealer as a supplier may not "disclaim or modify [except to limit in duration] any implied warranty to a consumer...." The result of this analysis is to invalidate the attempted disclaimer by the dealer of the implied warranties of merchantability and fitness.[5] Being bound by those implied warranties arising under state law, N.J.S.A. 12A:2-314 and 315, Marino Auto was liable to plaintiff for the breach thereof as found by the trial judge, and plaintiff could timely revoke his acceptance of the automobile and claim a refund of his purchase price. N.J.S.A. 12A:2-608 *63 and N.J.S.A. 12A:2-711. Zabriskie Chevrolet, Inc. v. Smith, 99 N.J. Super. 441 (Law Div. 1968). In this connection we note that the trial judge found that plaintiff's attempted revocation of acceptance was made in timely fashion, and that finding has adequate support in the evidence.
As the trial judge noted, 15 U.S.C.A. § 2310(d)(1) provides that a consumer who is damaged by the failure of a warrantor to comply with any obligation under the act, or under a written warranty or implied warranty or service contract, may bring suit "for damages and other legal and equitable relief...." Although the remedy of refund of the purchase price is expressly provided by the Magnuson-Moss Warranty Act for breach of a full warranty, granting this remedy under state law for breach of a limited warranty is not barred by or inconsistent with the act. 15 U.S.C.A. § 2311(b)(1) provides that nothing in the act restricts "any right or remedy of any consumer under State law or other Federal law." See also 15 U.S.C.A. § 2311(c)(2). Thus, for breach of the implied warranty of merchantability, plaintiff was entitled to revoke acceptance against Marino Auto, and a judgment for the purchase price less an allowance for the use of the vehicle was properly entered against Marino Auto. N.J.S.A. 12A:2-608 and 711. Cf. 15 U.S.C.A. § 2301(12) which defines "refund" as the return of the purchase price "less reasonable depreciation based on actual use where permitted" by regulations.
Plaintiff also could have recovered damages against Ford for Ford's breach of its written limited warranty. Marino Auto was Ford's representative for the purpose of making repairs to plaintiff's vehicle under the warranty. See Henningsen v. Bloomfield Motors, Inc., supra, 32 N.J. at 374; cf. Conte v. Dwan Lincoln-Mercury, Inc., 172 Conn. 112, 122-126, 374 A.2d 144, 149-150 (Sup.Ct.Err. 1976). The limited warranty expressly required the purchaser to return the vehicle "for warranty service" to the dealer or to any Ford or Lincoln-Mercury dealer if the purchaser is traveling or has moved a long distance or needs emergency repairs. Ford contends that it put purchasers *64 on notice that they should advise Ford's district office if they have problems with their cars that a dealer is unable to fix. The record contains a document listing "frequently asked warranty questions" which states:
The Dealership where you purchased your vehicle has the responsibility for performing warranty repairs; therefore, take your vehicle to that Dealership. * * *
If you encounter a service problem, refer to the service assistance section of your Owner's Guide for suggested action.
We do not read these provisions as requiring notice to Ford as a condition of relief against Ford when Ford's dealer has failed after numerous attempts to correct defects under warranty.
Normally, the measure of damages for a breach of warranty is the difference between the price paid by the purchaser and the market value of the defective product. Santor v. A & M Karagheusian, Inc., supra, 44 N.J. at 63, 68-69; see Herbstman v. Eastman Kodak Co., supra, 68 N.J. at 11. However, as Judge Conford said in his concurring opinion in Herbstman, supra, 68 N.J. at 15-16, under principles of strict liability in tort a purchaser may be entitled to rescind the transaction and receive the return of the purchase price from the manufacturer without privity if the defect causes substantial impairment of value of the product. The strict liability in tort doctrine as developed in this state in the Santor case, supra, eliminated the need for privity of contract between the purchaser and the manufacturer as a condition for the purchaser's claim for his loss of bargain caused by a defect in the product. As noted above, the Magnuson-Moss Warranty Act accomplished the same result.
One question posed by this case is whether recovery of the purchase price from the manufacturer was available to plaintiff for breach of the manufacturer's warranty. If the warranty were a full warranty plaintiff would have been entitled to a refund of the purchase price under the Magnuson-Moss Warranty Act. Since Ford's warranty was a limited warranty we must look to state law to determine plaintiff's right to damages or other legal and equitable relief. 15 U.S.C.A. § 2310(d)(1). Once privity is removed as an obstacle to relief we see no reason why *65 a purchaser cannot also elect the equitable remedy of returning the goods to the manufacturer who is a warrantor and claiming a refund of the purchase price less an allowance for use of the product. See Seely v. White Motor Co., 63 Cal.2d 9, 45 Cal. Rptr. 17, 20, 403 P.2d 145, 148 (Sup.Ct. 1965); Durfee v. Rod Baxter Imports, Inc., supra, 262 N.W.2d at 357-358, where the Minnesota Supreme Court held as a matter of state law that lack of privity does not bar a purchaser of a foreign car from revoking acceptance and recovering the purchase price from the distributor of such cars as distinguished from the local dealer. The decision was made without regard to the Magnuson-Moss Warranty Act.
We are dealing with the breach of an express contractual obligation. Nothing prevents us from granting an adequate remedy under state law for that breach of contract, including rescission when appropriate. Under state law the right to revoke acceptance for defects substantially impairing the value of the product (N.J.S.A. 12A:2-608) and to receive a refund of the purchase price (N.J.S.A. 12A:2-711) are rights available to a buyer against a seller in privity. Where the manufacturer gives a warranty to induce the sale it is consistent to allow the same type of remedy as against that manufacturer. See Durfee v. Rod Baxter Imports, Inc., supra; cf. Seely v. White Motor Co., supra. Only the privity concept, which is frequently viewed as a relic these days, Koperski v. Husker Dodge, Inc., 208 Neb. 29, 45, 302 N.W.2d 655, 664 (Sup.Ct. 1981); see Kinlaw v. Long Mfg. N.C., Inc., 298 N.C. 494, 259 S.E.2d 552 (Sup.Ct. 1979), has interfered with a rescission-type remedy against the manufacturer of goods not purchased directly from the manufacturer. If we focus on the fact that the warranty creates a direct contractual obligation to the buyer, the reason for allowing the same remedy that is available against a direct seller becomes clear. Although the manufacturer intended to limit the remedy to the repair and replacement of defective parts, the failure of that remedy, see N.J.S.A. 12A:2-719(2); Goddard v. General Motors Corp., 60 Ohio St.2d 41, 396 N.E.2d 761 (Sup.Ct. 1979); Seely v. *66 White Motor Co., supra, and the consequent breach of the implied warranty of merchantability which accompanied the limited warranty by virtue of the Magnuson-Moss Warranty Act, make a rescission-type remedy appropriate when revocation of acceptance is justified. Durfee v. Rod Baxter Imports, Inc., supra, 262 N.W.2d at 357.
Lastly, we consider Ford's contention that a counsel fee was improperly granted to plaintiff since no judgment was entered in favor of plaintiff against Ford and Ford contends it was not given adequate notice of the defects in the car. 15 U.S.C.A. § 2310(d)(2) provides that a consumer who "prevails in any action brought [in any court] under paragraph (1) of this subsection ... may be allowed by the court to recover as part of the judgment... expenses (including attorney's fees based on the actual time expended)...." This section is subject to the provisions contained in § 2310(e). Subsection (e) provides that, with certain exceptions, no action based upon breach of a written or implied warranty or service contract may be prosecuted unless a person obligated under the warranty or service contract "is afforded a reasonable opportunity to cure such failure to comply." Here that opportunity was given to Ford's designated representative to whom the purchaser was required to bring the car. A direct employee of Ford, Bednarz, also met with plaintiff or his wife and was made aware of some difficulty with the car. We are not certain of the extent of Ford's knowledge of those difficulties. However, in our view the opportunities given to Marino Auto to repair the vehicle satisfied the requirements of 15 U.S.C.A. § 2310(e) in this case.
As noted, Ford also contends that a counsel fee could not be awarded against Ford because plaintiff did not recover a judgment against Ford. The Magnuson-Moss Warranty Act permits a prevailing consumer to recover attorney's fees "as part of the judgment." The trial judge found that Ford had breached its warranty and that the car's value was substantially impaired. He entered no damage judgment against Ford. However, in the absence of proof of actual damages, plaintiff *67 was entitled to a judgment against Ford for nominal damages. Ruane Dev. Corp. v. Cullere, 134 N.J. Super. 245, 252 (App.Div. 1975); Ench v. Bluestein, 52 N.J. Super. 169, 173-174 (App.Div. 1958); Winkler v. Hartford Accident and Indem. Co., 66 N.J. Super. 22, 29 (App.Div.), certif. den. 34 N.J. 581 (1961); Packard Englewood Motors, Inc. v. Packard Motor Car Co., 215 F.2d 503, 510 (3 Cir.1954). Ford was not prejudiced by the failure of the trial judge to enter a judgment for nominal damages to which the award of attorney's fees could be attached. See Nobility Homes, Inc. v. Ballentine, 386 So.2d 727, 730-731 (Sup.Ct.Ala. 1980). The award of counsel fees fulfills the intent of the Magnuson-Moss Warranty Act. Without such an award consumers frequently would be unable to vindicate warranty rights accorded by law.
As to the amount of counsel fees allowed by the trial judge, we find no abuse of discretion. The allowance was for actual time spent at an hourly rate of $75. Consideration could properly be given to the fact that plaintiff's attorney undertook this claim on a contingency basis with a relatively small retainer. DR 2-106(A)(8). The normal breach of warranty case ought not require four separate appearances before the trial court. To some extent this was not in the control of plaintiff's attorney, and plaintiff might have obtained all the relief required against Ford on the first day of trial. But it did not work out that way. In other cases it may be possible to stipulate damages and simplify the issues, thus limiting the cost of this type of litigation for consumers and suppliers alike. But the issues raised in this case were novel in this State, and no one can be faulted for the difficulty and time consumed in this litigation.
We have stated that in an appropriate case a consumer could recover the purchase price from a manufacturer for breach of a limited warranty causing a substantial impairment of the value of the product. The application of the Magnuson-Moss Warranty Act is one distinction between this case and Herbstman v. Eastman Kodak Co., supra, 68 N.J. at 9-12, n. 1. However, we *68 need not determine whether plaintiff had the right to such relief in this case. Ordinarily, a purchaser seeking such relief after unsuccessful repairs should be required to give timely notice to the manufacturer of revocation of acceptance of defective goods and of his demand for a refund of the purchase price. See Durfee v. Rod Baxter Imports, Inc., supra, 262 N.W.2d at 353. Plaintiff's complaint alleges that such notice and demand were given to Ford in this case, but no finding was made by the trial judge on plaintiff's claim against Ford. Having determined that plaintiff was entitled to a judgment for nominal damages and counsel fees against Ford, and that judgments against Marino Auto and for indemnification by Ford were properly entered, it makes no difference in this case whether plaintiff was also entitled to a refund of his purchase price from Ford.
The result in this case differs from that reached in Edelstein v. Toyota Motors Distributors, supra. However, the differences in the cases, the absence there of proof of any warranty from defendants, and the apparent failure of the purchaser to rely on the Magnuson-Moss Warranty Act make it unnecessary for us to comment on that holding.
Affirmed.
NOTES
[1] See Pavesi v. Ford Motor Co., 155 N.J. Super. 373, 377 (Ch.Div. 1978).
[2] N.J.S.A. 12A:1-201(10) defines "conspicuous" to include writing that is "larger" or in contrasting type or color or which bears a heading printed in capital letters so that "a reasonable person against whom it is to operate ought to have noticed it." The disclaimer of warranties contained on the sales order-contract was placed in a rectangular block with lined borders and, although it did not contain a prominent caption warning the purchaser that the contract contained no warranties from the dealer, for the purpose of this opinion we will assume that the disclaimer was conspicuous. N.J.S.A. 12A:1-201(10) provides that "the court" shall determine whether a term or clause is "conspicuous."
[3] In Miller and Kanter, "Litigation Under Magnuson-Moss: New Opportunities in Private Actions," 13 U.C.C.L.J. 10, 21-22 (1980), the authors discuss the broad definition of a consumer and state that "an assumption is now created that no privity restriction exists."
[4] The warranty also provided:

TO THE EXTENT ALLOWED BY LAW:
1. ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS IS LIMITED TO THE 12 MONTH OR 12,000-MILE/19,312-KM DURATION OF THIS WRITTEN WARRANTY.
2. NEITHER FOR NOR THE SELLING DEALER SHALL HAVE ANY RESPONSIBILITY FOR LOSS OF USE OF THE VEHICLE, LOSS OF TIME, INCONVENIENCE, COMMERCIAL LOSS OR CONSEQUENTIAL DAMAGES.
Some states do not allow limitations on how long an implied warranty lasts or the exclusion or limitation of incidental or consequential damages, so the above limitations may not apply to you.
This warranty gives you specific legal rights, and you also may have other rights which vary from state to state.
[5] The same holding would apply if the undertaking by Marino Auto to perform the "owner service policy" is construed as a "service contract." 15 U.S.C.A. § 2308(a), supra.