**HENRY HEIDE, INC., Appellant,**

v.

**WRH PRODUCTS CO., INC.,
Cross-Appellant.**

**Appeal of STERILITE CORPORATION
and the Dow Chemical Company.**

**Nos. 84–5341, 84–5353.**

United States Court of Appeals,
Third Circuit.

Argued March 19, 1985.

Decided June 27, 1985.

As Amended July 17, 1985.

Rehearing Denied July 23, 1985.

Affirmed in part; vacated in part.

Edward J. Gilhooly [argued], Edwards & Antholis, Morristown, N.J., Peter Aron, Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for appellant.

Clarkson S. Fisher, Jr. [argued], John P. Croake, Evans, Koelzer, Osborne & Kreizman, Red Bank, N.J., for cross-appellant.

Richard J. Shackleton [argued], Shackleton, Hazeltine & Buczynski, Ship Bottom, N.J., for appellee, cross-appellee Dow Chemical Co.

Stephen H. Oleskey [argued], Hale & Dorr, Boston, Mass., for appellee, cross-appellee Sterilite Corp.

Before SEITZ and HIGGINBOTHAM, Circuit Judges, and GILES, District Judge [*].

## OPINION OF THE COURT

SEITZ, Circuit Judge.

The plaintiff, Henry Heide, Inc. ("Heide"), appeals from an order of the district court granting a summary judgment dismissing its claims against defendants Sterilite Corporation ("Sterilite") and Dow Chemical Company ("Dow"). This order was made final pursuant to Federal Rule of Civil Procedure 54(b). Another defendant, WRH Products Co., Inc. ("WRH"), appeals from an order of the district court granting a summary judgment dismissing its cross-claims against Sterilite and Dow. This order was also made final pursuant to Rule 54(b). This court has appellate jurisdiction under 28 U.S.C. § 1291 (1982).

### I.

The following facts are stipulated or undisputed. In 1973, Heide bought some 23,-000 plastic trays from WRH. WRH designed the trays, but had contracted their manufacture to Sterilite. Sterilite purchased the plastic used in the trays from Dow.

Heide, a New Jersey candy manufacturer, used the trays in its manufacturing process which included drying the candy on the trays at relatively high heat. Prior to contracting to purchase the trays, Heide received from WRH at different times two sets of sample trays which it tested. The first set warped, possibly from the heat in the drying stage. Approximately one month later, WRH delivered a second set of samples. Heide tested this set and found them acceptable. Heide then contracted with WRH to purchase some 23,000

---

[*] The Honorable James T. Giles of the United States District Court for the Eastern District of Pennsylvania sitting by designation.

trays. Within two to four weeks following the initial use of the trays, Heide noticed that the trays were warping. Eventually, the trays proved unusable for Heide's process and were taken out of service.

After negotiations failed, Heide commenced this action against WRH, Sterilite and Dow alleging claims based on breach of warranty, negligence, and strict liability. WRH cross-claimed against Sterilite and Dow for indemnity and contribution. After extensive discovery, the case reached the summary judgment stage. The district court dismissed all of Heide's claims except for a single claim against WRH for breach of warranty by sample. The district court later dismissed all of WRH's cross-claims against Sterilite and Dow. These appeals then followed.

On a review of a summary judgment, we do as the district court was required to do: we determine whether the record as it stands reveals any disputed issue of material fact, assume the resolution of any such issue in favor of the non-movant, and then determine whether the movant is then entitled to judgment as a matter of law. *First Jersey National Bank v. Dome Petroleum Limited,* 723 F.2d 335, 338 (1983). It is uncontested that New Jersey law applies to this diversity action.

## II. Personal Jurisdiction Over Sterilite

As a preliminary matter, Sterilite claims, as it did in the district court, that the district court lacked in personam jurisdiction over it. Assuming that Sterilite may advance this issue on this appeal without cross-appealing, we hold that the district correctly determined that jurisdiction existed.

Under Rule 4(e) of the Federal Rules of Civil Procedure, the district court had jurisdiction over Sterilite if a New Jersey state court would have had jurisdiction. In New Jersey, the state courts have jurisdiction over all foreign corporations to the extent consistent with due process of law. N.J. Civ.Prac.R. 4:4–4.

■ Due process requirements are satisfied if Sterilite has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). When the controversy is specifically related to a defendant's contacts with a forum, there is sufficient due process contact if "the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz,* — U.S. —, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citations omitted).

■ In this case, the litigation is specifically related to Sterilite's contacts with New Jersey. Sterilite knew that Heide was the ultimate purchaser of the trays. It shipped the trays directly from its factory in Massachusetts to Heide's plant in New Jersey. Sterilite's president and chief engineer traveled to New Jersey and met with Heide's representatives in connection with this sale, and was aware of the problems that Heide had with the trays. It was clearly foreseeable that if there was litigation over the trays, it would occur in New Jersey. Sterilite's "conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Insofar as this litigation is related to Sterilite's purposeful conduct directed at New Jersey and its residents, we hold that there were sufficient contacts for in personam jurisdiction. We therefore affirm the district court on this matter.

## III. Heide's Claims Against Sterilite and Dow in Strict Liability and Negligence

Heide asserts that it may sue Sterilite, the manufacturer of the tray, and Dow, the supplier of the plastic resin, under theories of strict liability and negligence. The district court held that New Jersey law would

not permit a buyer, who suffered only economic injury, to sue a seller or manufacturer in negligence or strict liability.

Subsequent to the commencement of this appeal, the New Jersey Supreme Court rendered an opinion on these issues. It stated:

> We hold that a commercial buyer seeking damages for economic loss resulting from the purchase of defective goods may recover from an immediate seller and a remote supplier in a distribution chain for breach of warranty under the U.C.C., but not in strict liability or negligence. We hold also that the buyer need not establish privity with the remote supplier to maintain an action for breach of express or implied warranties.

*Spring Motors Distributors, Inc. v. Ford Motor Company*, 98 N.J. 555, 489 A.2d 660, 663 (1985). The bases for its holding were the differences between the public policies that underlay tort law and the Uniform Commercial Code ("U.C.C."). Under, tort law, there is a forced allocation of the risk of loss. For noncommercial entities, such as consumers, there is often no private allocation of the risk of loss, and if there were, it would be unfair to place the risk of loss on the consumer rather than the manufacturer given the unequal resources and bargaining positions of the parties. Thus, in those circumstances, public policy will allocate the risk of loss to the better riskbearer through the doctrines of strict liability and negligence. When commercial parties of equal bargaining power allocate the risk of loss by contract, however, there is a strong public policy to give effect to the private allocation. Under the U.C.C., commercial parties can allocate the risk of loss from defects through warranties, disclaimers and limitations on warranties. "In sum, the U.C.C. represents a comprehensive statutory scheme that satisfies the needs of the world of commerce, and courts should pause before extending judicial doctrines that might dislocate the legislative structure." 489 A.2d at 671.

■ As a federal court exercising diversity jurisdiction we are bound to follow the law of the forum state as expressed by the highest court of that state. The facts of this case fall squarely within the holding of *Spring Motors*. Heide's claimed injuries are economic losses caused by a defective product. Heide, WRH, Sterilite, and Dow are all commercial entities that the record clearly shows were able to bargain on equal footing. Accordingly, Heide's claims against Dow and Sterilite in negligence and strict liability were correctly dismissed.

Heide, however, maintains that it still may assert claims for misrepresentation against Sterilite. The only misrepresentation claim that Heide asserted in the district court was a claim for negligent misrepresentation, not fraud. Heide, therefore, on this appeal may only contest the dismissal of the claim for negligent misrepresentation.

The basic rationale of *Spring Motors* is that the U.C.C. provides an adequate and integrated set of rights and remedies for disappointed commercial buyers of goods. 489 A.2d at 673–74. The court stated:

> [T]he U.C.C. "is generally regarded as the *exclusive source* for ascertaining when a seller is subject to liability for damages if the claim is based on intangible economic loss not attributable to physical injury to person or harm to a tangible thing other than the defective product itself."

489 A.2d at 673 (quoting W. Prosser & W. Keeton, Handbook of the Law of Torts § 95A at 680 (5th ed. 1984)) (emphasis in original). We believe that based on *Spring Motors*, the New Jersey Supreme Court would bar a claim of negligent misrepresentation in these circumstances. Because this claim arises out of a sales transaction between commercial entities, it should be analyzed within the framework of the U.C.C. rather than by the rules of nonintentional tort law. Thus, the district court correctly dismissed these tort claims.

### IV. Heide's Claims For Breach of Warranty

Heide never directly contracted with the manufacturer, Sterilite, or the supplier of the plastic resin, Dow. Heide, however,

seeks to claim damages against Sterilite and Dow as a third party beneficiary of any implied or express warranty that Sterilite may have given to WRH or that Dow may have given to Sterilite. The district court did not explain why it dismissed Heide's warranty claims against Sterilite and Dow. In reading its opinion, we discern two possible bases for its decision. First, it may have held that because there was no privity between Heide and Sterilite or between Heide and Dow, Heide could not make a claim under any warranty that Sterilite or Dow may have given. *See Herbstman v. Eastman Kodak Co.*, 68 N.J. 1, 342 A.2d 181 (1975). Second, it may have held that because Heide tested the samples prior to purchasing the trays, it assumed the risk of any defect in the sample. N.J.S.A. 12A:2–316(3)(b) (excludes buyer's rights under any implied warranty after buyer examines goods) (1962).

■ In *Spring Motors Distributors, Inc. v. Ford Motor Company*, 98 N.J. 555, 489 A.2d 660 (1985), the New Jersey Supreme Court held that an ultimate user may sue a component manufacturer in certain circumstances for breach of implied and express warranties even though the user was not in vertical privity with the component manufacturer. 489 A.2d at 674. Although the Court removed privity as a requirement for a warranty action, it did not hold that a buyer in all circumstances would be a third party beneficiary of all warranties given by parties higher up in the distribution chain. The Court left open the parameters of the circumstances under which a buyer not in privity could sue a remote seller. We believe the rules to be applied will depend upon the nature of the warranty involved. We predict that the New Jersey Supreme Court would hold that for warranties which are not limited to particular users or specialized applications, such as an implied warranty of merchantability, the remote seller's warranty extends to all foreseeable buyers. This rule best comports with the New Jersey Supreme Court decision in *Spring Motors*. For a warranty of fitness for a particular purpose, we predict that New Jersey rule

would be that the remote seller's warranty extends to an ultimate buyer at least where the seller was aware of the buyer's existence and particularized needs. Because the resolution of these issues involve questions of fact that are not clear on this record, we will remand to the district court for an appropriate disposition as to whether any warranty given by Sterilite or Dow extends to Heide.

Even if their warranties extend to Heide, Sterilite and Dow contend that Heide has no valid claim for breach of warranty. They contend that all implied warranties are excluded because Heide tested the trays before purchasing them, and that neither Sterilite nor Dow gave any express warranties on their products.

A. Implied Warranties.

Sterilite and Dow argue that under the N.J.S.A. 12A:2–316(3)(b) (1962), Heide lost all implied warranties when it tested the trays to its own satisfaction prior to purchase. N.J.S.A. 12A:2–316(3)(b) provides that:

> when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him.

Heide argues that this section applies only to implied warranties that were given directly to it by WRH, and not to implied warranties from Sterilite or Dow that it may claim as a third party beneficiary. The parties point to no New Jersey case law on this issue.

■ Upon examination of the policies that underlay section 2–316(3)(b) of the U.C.C., we believe that if a buyer undertakes a reasonable examination of the goods, he is precluded from asserting a claim for breach of implied warranty against anyone who was responsible for a defect that the buyer ought, in the circumstances, to have noticed. The concept of

this section is that when a buyer examines a product fully, the buyer is on notice that he bears the risk of loss as to defects that ought to have been revealed. N.J.S.A. 12A:2–316 comment 8 (1962); J. White and R. Summers, *Uniform Commercial Code* § 12–6 p. 450 (2d ed. 1980). By demanding that the sale be contingent upon testing of a sample, Heide assumed the risk of defects that were in the sample and should have been noticed.

■ However, although we have determined that N.J.S.A. 12A:2–316(3)(b) may apply to bar Heide's claims against sellers with which it was not in privity, we cannot determine at this procedural stage whether the defect in the trays ought to have been revealed in the testing of the second sample. Thus, we cannot here determine whether Heide's claims in implied warranty are excluded by N.J.S.A. 12A:2–316(3)(b). We say this because there is a disputed question of fact as to whether Heide ought to have noticed a defect in the trays through its testing procedure. Heide has presented evidence to suggest that it should not be charged with notice of the defect. Thus, there is evidence to support that the defect in the trays became apparent only after several weeks of use. App. at 147. There is further evidence to suggest that a test by Heide lasting several weeks would have been unreasonable. App. at 105–06 (Peter Heide Aff.). Section 12A:2–316(3)(b) does not exclude warranties for defects that would be revealed only under unreasonably stringent tests.

Sterilite and Dow contend that Heide was clearly on notice of the defect because Heide ordered the trays despite noticing a slight deformation of the trays after testing the second set of samples. Heide, however, claims that it had been led to believe that the plastic would "set" and would not continue to deform. App. at 105–06 (Peter Heide Aff.). Thus, Heide was not necessarily on notice from the results of the second test that the trays were defective. We, therefore, conclude that Heide's claims against Sterilite and Dow based on implied warranties must be remanded to the dis-

trict court for an appropriate resolution as to whether N.J.S.A. 12A:2–316(3)(b) bars Heide's claim, and if not, whether any implied warranty was breached.

B. Express Warranties.

1. Sterilite.

Heide claims that Sterilite breached an express warranty by sample. Heide argues that since Sterilite's contract to manufacture the trays was subject to the approval of a sample provided by Sterilite to WRH, which was in turn given to Heide, the manufacturing contract was based on a sale by sample. Heide thus argues that Sterilite warranted to WRH that the final production trays would conform to the sample given to WRH, and that Heide has the benefit of this warranty as a third-party beneficiary.

■ Sterilite denies that it gave such a warranty. There is some evidence to support Heide's factual contentions that Sterilite's contract was based upon the acceptance of the sample tray. The deposition testimony of Sterilite's chief engineer indicates that Sterilite was aware of the contingent nature of WRH's sale to Heide, and that Sterilite would not begin shipping of the trays until the sample was approved. App. at 626–27. Thus, we cannot determine, as a matter of undisputed fact, that Sterilite did not give an express warranty by sample.

Sterilite further contends that even if there were a warranty, the evidence shows that there was no breach since it is stipulated that the trays sold to Heide were made of the same materials and from the same mold as the sample trays. App. at 144–45. However, the district court found, and we agree, that there is a disputed question of fact as to whether the trays sold to Heide conformed to the sample. The record shows that the second sample passed Heide's tests, and that the later trays did not stand up to Heide's production process. Further, there is evidence that there were some modifications in the manufacturing process between the time of

the manufacture of the sample and the final production trays. App. at 663–64. If these changes were material and the proximate cause of the defect, then Heide may have a claim under Sterilite's warranty as a third party beneficiary. Since these matters are not established with certainty on this record, this claim must be remanded for appropriate disposition.

### 2. Dow.

■ Heide claims that Dow gave an express warranty to Sterilite through a product specification sheet which listed several physical properties of the Dow plastic. Heide further asserts that Dow breached this express warranty when the resin it provided failed to meet the specifications on the sheet. Dow denies that the product specification sheet was a warranty. It claims that the stipulated facts show that there was no reliance upon the product specification sheet by Sterilite in choosing the plastic, and therefore, the sheet was not a basis for the bargain. N.J.S.A. 12A:2–313 (1962).

The parties stipulated:

Because of recognized deviations in the actual industrial application of the product as opposed to results obtained under strictly controlled laboratory testing, the determination of the plastic to be used in molding is based upon ... the testing of samples by the ultimate user and not on information contained on a Product Information Sheet.

App. at 128. The facts as stipulated show that the product specification sheet was not the basis of any bargain between Dow and Sterilite. Dow gave no express warranty in this case that the resin would conform to the product specification sheet, and thus Heide cannot be the beneficiary of any such warranty.

### V. WRH's Cross-Appeal

WRH claims that if it is liable to Heide, Sterilite and Dow are liable to it for contribution under the New Jersey's Joint Tortfeasors Contribution Act or for common law indemnification. The district court dismissed both cross-claims without explanation. Because Sterilite and Dow are not liable in tort, *Spring Motors Distributors, Inc. v. Ford Motor Company*, 98 N.J. 55, 489 A.2d 660 (1985), WRH's cross-claim for contribution under the Joint Tortfeasors Contribution Act was correctly dismissed.

■ Common law indemnification, under New Jersey law, is available as between parties in a product distribution chain if the party claiming indemnity was not at fault and the party against whom indemnity is claimed was responsible for the defect in the product. *Newmark v. Gimbel's Incorporated*, 54 N.J. 585, 258 A.2d 697, 705 (1969). A defendant may have a claim for indemnity from another defendant, even if the plaintiff's claim is based solely on contract or quasi-contract under the U.C.C. *Pawelec v. Digitcom Inc.*, 192 N.J.Super. 474, 471 A.2d 60, 62–63 (App.Div.1984); *Ventura v. Ford Motor Corporation*, 180 N.J.Super. 45, 433 A.2d 801, 806 (App.Div.1981). *See also* Restatement of Restitution § 76 (1937).

■ On this record, it is not entirely clear where the fault, if any, lies among Sterilite, Dow, and WRH for purposes of indemnification. We therefore cannot affirm the summary judgment dismissing WRH's claim for indemnity. This claim will be remanded to the district court for appropriate disposition.

WRH also contends that this court has jurisdiction to decide issues as between Heide and WRH. However, only the judgment dismissing Sterilite and Dow was made final under Rule 54(b). We have no jurisdiction to decide claims that are not incorporated in a final judgment. All issues relating to the claims between Heide and WRH remain interlocutory and are subject to revision by the district court.

### VI. Conclusion

We will affirm the judgment of the district court insofar as it dismisses the claims and cross-claims against Dow and Sterilite based on theories of negligence and strict liability. We will also affirm the judgment of the district court insofar as it dismisses

the express warranty claim against Dow. The judgment of the district court in all other respects will be vacated and remanded for proceedings consistent with this opinion. Each party shall bear its own costs.