[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: CHARLES H. HALL, III'S MOTION TO DISMISS
This is an action commenced by plaintiff, Center Capital Corporation (hereinafter, "Center Capital") against the defendants Charles H. Hall, III (hereinafter, "Hall") and Shelby Williams Industries, Inc. (hereinafter, "Shelby Williams"). Hall filed a motion to dismiss pursuant to Section 142 of the Practice Book (the "Motion to Dismiss"). The basis for the Motion to Dismiss is Hall's claim that this court lacks personal jurisdiction over him. Limited discovery directed to the jurisdictional issue has been taken.[1] Center Capital claims the discovery has established that Hall misrepresented to the plaintiff that several parties who were seeking capital from Center Capital had purchased and paid for over $181,000.00 worth of Shelby Williams' furniture and equipment. Center Capital received a written communication signed by Hall, containing the misrepresentation, and relied upon it in underwriting a transaction with the applicants, certain lessees. Center Capital bought and leased back to the certain "lessees" hereinafter described, certain equipment and furniture allegedly purchased from Shelby Williams. Center Capital was damaged, it claims, when the lessees later defaulted on payments due.
Center Capital has raised claims against Hall sounding in negligent and intentional misrepresentation, conversion, theft under Conn. Gen. Stat. 52-564, unfair trade practices, and conspiracy to injure Center Capital's business and trade under Virginia statute 18.2-499, et. seq. Center Capital claims discovery taken, to date, establishes that Hall CT Page 5884 caused fraudulent misrepresentations to be communicated to Center Capital in Connecticut. Center Capital claims his misrepresentations caused injury to Center Capital within Connecticut. It is further claimed that under these facts, the requirements for long-arm jurisdiction under Conn. Gen. Stat. 52-59(b) are met. Furthermore, Center Capital claims the evidence also supports its allegations that Hall should reasonably have expected his misrepresentations to have an effect in Connecticut. This court agrees with the assertions made by Center Capital. This court finds that statutory requirements under Conn. Gen. Stat. 52-59(b), are fulfilled. It finds also that justification has been provided for the assertion of long-arm jurisdiction under the Constitution of the United States. Hall's Motion to Dismiss is properly denied.
In the fall of 1990, Center Capital began to negotiate a proposed sale-leaseback of furniture, equipment and furnishings to be installed in a new restaurant in Vienna, Virginia. The new restaurant was named The Company Inkwell, and is located at 8240 Leesburg Pike, Vienna, Virginia. Center Capital executed a lease of restaurant equipment and furnishings with the following parties: Babic, Inc. T/A Co. Inkwell Club (hereinafter "Babic"); Holbert K. Farthing; J.S. Hayes Building Supplies; and J.L. Hayes, previously and are referred to collectively hereinafter as the "Lessees".
The equipment purchased and leased back to the Lessees is listed in the Schedules to the Lease. Center Capital executed Schedule 02 to the Lease, pursuant to which Center Capital paid $300,000.00 to the Lessees to purchase the equipment listed in Schedule 02. The purported vendor of much of the equipment leased under Schedule 02 was Shelby Williams.
Prior to entering into the Lease, Center Capital took steps to verify that the Lessees had purchased the equipment and furnishings which Center Capital was to purchase from, and lease back to, the Lessees. As part of those efforts, Center Capital required proof that Shelby Williams had sold equipment and furnishings to the Lessees, and received payment in full. Center Capital obtained a letter on the letterhead of Shelby Williams which stated, in pertinent part, that "Invoice dated 12/26/90 totaling $181,024.00 has been paid in full by Babic, Inc." The document, which is referred to hereinafter as the "Letter", was written and signed by Hall on the letterhead of Shelby Williams. CT Page 5885
Center Capital received the Letter on or about December 26, 1990. Attached to the Letter was a document identified in the Letter as an "invoice". The "invoice" identifies specific items of equipment, including chairs, stools and custom settees, and their prices. The Invoice, which is prepared on Shelby Williams letterhead, is addressed to Mr. Sam McMichael, The Company Inkwell, 8240 Leesburg Pike, Vienna, VA 22180. Among the items contained on the Invoice are charges for "Freight to Virginia", and "Installation of custom settees". The Invoice states "Total Invoices Paid to Date" are $181,024.00". Hall prepared and signed the Invoice.
The representations made by Hall and Shelby Williams to Center Capital in the Letter and Invoice were false, and were known to be false at the time they were made. Shelby Williams never delivered any equipment or furnishings to Babic or The Company Inkwell restaurant. Shelby Williams had not received payment for the items on the Invoice when the Letter and Invoice were prepared by Hall.
Hall was, at all relevant times, a regional sales vice-president for Shelby Williams. His duties included the solicitation of business for the Washington D.C./Central Atlantic area, including the area of Vienna, Virginia. In executing the Letter and Invoice, Hall was acting in furtherance of his duties as regional vice-president of Shelby Williams. Hall admits that he conducted negotiations with Sam McMichael, the president of Babic, regarding the purchase from Shelby Williams of chairs, stools, custom settees, and formal dining rooms, which had a total price over $170,000.00. Hall claims that in December, 1990, McMichaels asked him to draft the Letter, and Hall complied by preparing and executing the Letter.
The Letter is addressed to Center Capital Corp., 20 Tower Lane, Avon, Connecticut. This address is Center Capital's principal place of business, and the location at which Center Capital received the Letter. The Letter was received on or about December 26, 1990. Shortly afterward, in reliance upon the representations made by Hall and Shelby Williams in the Letter and the Invoice, Center Capital decided to advance funds totalling over $180,000.00 to the Lessees for the sale and leaseback of the equipment listed in the Invoice. Center Capital, claims it, in further reliance upon the representations made by Hall and Shelby Williams, advanced additional CT Page 5886 funds to the Lessees for the sale and leaseback of other equipment to be used at The Company Inkwell restaurant. The total amount of money advanced to the Lessees by Center Capital, it claims, in reliance upon the misrepresentations in the Letter and Invoice was $500,000.00. The Lease is in default and none of the Equipment has been found or repossessed.
In determining whether personal jurisdiction exists over an individual pursuant to the Connecticut long-arm statute, a two pronged inquiry must be made. Frazer v. McGowan,198 Conn. 243, 246 (1986); Lombard Bros., Inc. v. General Asset Management Co., 190 Conn. 245, 250 (1983). The first inquiry is whether the long-arm statute authorizes the court to assert jurisdiction. Frazer, 198 Conn. at 246. Secondly, the court must determine whether the exercise of long-arm jurisdiction would violate due process. Id.
Disputes concerning jurisdiction over the person are properly raised under Connecticut's rule of practice by a motion to dismiss. Chrysler Credit Corporation v. Fairfield Chrysler-Plymouth, Inc., 180 Conn. 223, 226 (1982); Practice Book 142 et. seq. Practice Book 143(2) provides that a "motion to dismiss shall be used to assert . . . (2) lack of jurisdiction over the person. . . ." The defendant Hall's motion to dismiss is founded upon his claim that this court lacks personal jurisdiction over him.
Where the jurisdictional basis for a claim is not clear on the face of the record because service is made under the long-arm statutes, additional facts establishing the minimum contracts required by due process may need to be shown. Standard Tallow Corporation v. Jowdy, 190 Conn. 48, 54 (1983). Where a motion to dismiss for lack of personal jurisdiction raises a question of fact which cannot be determined from an examination of the record, the burden of proof rests on the plaintiff to present evidence which will establish jurisdiction. Id., 190 Conn. at 54. In meeting this burden of proof, the plaintiff is not required to prove the defendant's liability, but only the commission of acts in relation to the state which justify the court's exercise of jurisdiction. Stephenson, Conn. Civ. Proc. (2nd Ed.) 96, p. 390, citing Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673 (1957).
This court has personal jurisdiction over Hall under the provisions of Conn. Gen. Stat. 52-59b(a)(2). Hall CT Page 5887 committed a tortious act within Connecticut. Conn. Gen. Stat.52-59b, Connecticut's long-arm statute governing the assertion of jurisdiction by Connecticut courts over nonresidents, provides in pertinent part:
 . . . a court may exercise personal jurisdiction over any nonresident individual . . . who in person or through an agent: . . . (2) commits a tortious act within the state . . . or, (3) commits a tortious act outside the state causing injury to person or property within the state . . . if he (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; . . . .
Hall is a nonresident individual, and the plaintiff has raised claims of tortious conduct against Hall. In its Complaint, Center Capital alleges that Hall misrepresented to it that Babic had purchased and paid for equipment costing over $180,000.00. Hall himself admits that he prepared and executed the Letter, advising that Babic had paid over $181,000.00 for certain specified equipment. In fact, Babic had neither made any payments, nor received any equipment from Shelby Williams. Center Capital was damaged when it acted in reliance upon the misrepresentations, and funded $500,000.00 to the Lessees. Hall's misrepresentations form the factual basis from which Center Capital's tort claims of misrepresentation arise. Therefore, the first element of the jurisdictional analysis required under Conn. Gen. Stat. 52-59b(a)(2) has been met: Hall committed a tortious act.
The only additional issue which needs to be determined under Conn. Gen. Stat. 52-59b(a)(2) is whether the tortious conduct alleged was committed within Connecticut. Even where the sole contact of the defendants with Connecticut is to send fraudulent misrepresentations into Connecticut by mail and telephone, personal jurisdiction over the tortfeasors under Conn. Gen. Stat. 52-59b(a)(2) has been found. David v. Weitzman, 677 F. Sup. 95, 99 (D. Conn. 1987). Jurisdiction exists under this long-arm statute because the tortious conduct is committed within Connecticut. Id.,677 F. Supp. at 97. Other federal decisions construing the provisions of the corporate long-arm statute, Conn. Gen. Stat. 33-411 (c), have concluded that sending fraudulent misrepresentations into Connecticut by mail and telephone is conduct within the state. CT Page 5888 See, Teleco Oilfield Services, Inc. v. Skandia Insurance Co.,656 F. Sup. 753, 758 (D. Conn. 1987); McFaddin v. National Executive Search, Inc., 354 F. Sup. 1166, 1171 (D. Conn. 1973). Therefore, since Hall's conduct is interpreted as the committing of a tortious act within Connecticut, the requirements of Conn. Gen. Stat. 52-59b(a)(2) have been met.
Connecticut's courts have personal jurisdiction over Hall under the provisions of Conn. Gen. Stat. 52-59b(a)(3)(B). The sending of fraudulent misrepresentations into another state has been held to constitute the commission of a tortious act outside the state, causing injury within the state.
Connecticut's Supreme Court has noted that Conn. Gen. Stat. 52-59b was modeled upon New York Civil Practice Law 302,[2] and found the judicial interpretation given to that statute pertinent. See, Zartolas v. Nisenfeld, 184 Conn. 471,474 (1981). The decisions interpreting New York's statute establish that Connecticut courts have personal jurisdiction over Hall under the provisions of Conn. Gen. Stat.52-59b(a)(3)(B), as well as Conn. Gen. Stat. 52-59b(a)(2).
It is settled law in New York that where a defendant makes a misrepresentation outside the state, intending that it be relied upon within the state, the tort has been committed outside the state for jurisdictional purposes. Cleopatra Kohlique, Inc. v. New High Glass, Inc., 652 F. Sup. 1252,1256 (E.D.N.Y. 1987); Marine Midland Bank v. Keplinger Associates, 488 F. Sup. 699, 703 (S.D.N.Y. 1980). Hall himself admits that he prepared and executed the Letter, advising that Babic had paid over $181,000.00 for certain specified equipment. Hall addressed the Letter to Center Capital at its headquarters in Connecticut. There is no dispute that the information contained in the Letter and Invoice is false; Babic had paid Shelby Williams nothing, and had received neither equipment nor furniture. Center Capital was damaged when it acted in reliance upon the misrepresentations, and funded $500,000.00 to the Lessees. Therefore, the first element of the jurisdictional analysis required under Conn. Gen. Stat.52-59b(a)(3)(B) has been met.
Hall's misrepresentation caused injury to Center Capital within Connecticut. The prevailing caselaw interpreting New York's long-arm jurisdictional statute establishes that where a defendant knowingly sends a false statement into CT Page 5889 a state intending that it be relied upon to the recipient's injury, then long-arm jurisdiction in the state where the misrepresentation was received and acted upon will lie, if all other requirements are met. Hargrave v. Oki Nursery, Inc.,636 F.2d 897 (2d Cir. 1980); Marine Midland Bank v. Keplinger Associates, 488 F. Sup. 699 (S.D.N.Y. 1980); Bankers Trust Co. v. Mora, 523 F. Sup. 285 (S.D.N.Y. 1981). In Hargrave, the plaintiff New York vineyard purchased wine grapes from the defendant California grower in reliance upon the grower's misrepresentation that the grapes were free from disease. The vineyard brought suit after it discovered that it had purchased grapes which were not suitable for wine production because of their diseased condition. In its analysis, the Hargrave court concluded that personal jurisdiction over the California grower existed in New York under Section 302(a)(3), because there was a sufficiently directed injury within New York to sustain jurisdiction. The "immediate and direct" injury suffered by the plaintiff as a result of the defendant's misrepresentations was the loss of money paid by them for the diseased vines. The injury was felt in New York, since the plaintiff was domiciled there, did business there, and was located there when it received the misrepresentation. Hargrave,636 F.2d at 899-900. See also, Bankers Trust,523 F. Supp. at 287.
It is not necessary that the misrepresentation be made in order to induce payments to the party making the misrepresentations. In Marine Midland, the plaintiff lender was considering making a loan for the development of a mine. In deciding whether to make the loan, the New York lender relied upon false representations contained in a report received from the out of state defendants, and made loans to a third party borrower. The Marine Midland court stated that since the lender had made disbursements to the borrowers in New York, the site of the injury was New York.
Similarly, in the instant action, Center Capital was injured in Connecticut. Center Capital is domiciled in Connecticut, does business in Connecticut, and received Hall's misrepresentations in Connecticut. Center Capital underwrote the Lease in Connecticut, and acted in reliance upon the misrepresentations by approving the Lease in Connecticut. Center Capital suffered a direct and immediate injury in Connecticut, since it advanced funds in Connecticut, and suffered the loss of money in Connecticut after the lessees defaulted. CT Page 5890
The defendant Hall argues at length that the appropriate test for use in this case is the "critical events" test. under this formulation, in cases involving commercial torts, the situs of the injury for purposes of evaluating the existence of personal jurisdiction is "the place where the critical events associated with the dispute took place." American Eutectic Welding Alloys Co. v. Dytron Corp., 439 F.2d 428,433 (2d Cir. 1971). Hall argues that the critical events in this case occurred in Virginia, not Connecticut, and that the statutory requirements for personal jurisdiction have not been met.
The very argument advanced by the defendant was rejected in Hargrave v. Oki Nursery, Inc., 636 F.2d 897 (2d Cir. 1980), which distinguished the "critical events" line of cases in reasoning appropriate here:
 This is not a case where a defendant commits a business tort such as unfair competition or diversion of opportunities in one state and the ultimate result is a loss of profits to the plaintiff which is fortuitously domiciled in another state.
Hargrave, 636 F.2d at 900.
This present case involves fraud where the defendant intended his misrepresentation to be relied upon in Connecticut. The plaintiff here has suffered a monetary loss in Connecticut, but not because it is "fortuitously domiciled" here. The result of Hall's misrepresentations was the extraction of money from the plaintiff in Connecticut. The Hargrave court stated that "[n]othing could be a `closer' or more `direct' result" from the misrepresentations. Id. Hall's misrepresentations caused injury to Center Capital within Connecticut, and the requirements for finding personal jurisdiction under Conn. Gen. Stat. 52-59b(a)(3)(B) have been met.
Hall should reasonably have expected his misrepresentations to have consequences in Connecticut. Conn. Gen. Stat. 52-29b(a)(3)(B) allows assertion of personal jurisdiction over the nonresident tortfeasor only if that individual "expects or should reasonably expect the act to have consequences in the state. . . ." Hall admits that he drafted the Letter, addressed to Center Capital in Avon, Connecticut. He also admits that the statements contained in the letter were CT Page 5891 untrue.
A nonresident tortfeasor is subject to the authority of the Connecticut courts if he should reasonably have expected his misrepresentations to have consequences in Connecticut. "It is not necessary that defendant foresee the specific event producting injury in New York; it is sufficient that defendant foresee the possibility of forum-consequences generally." Cleopatra Kohlique, Inc. v. New High Glass, Inc.,652 F. Sup. 1254, 1257 (E.D.N.Y. 1987). In attempting to prove that this court has jurisdiction over Hall, the plaintiff is not required to prove Hall's liability, but rather that Hall committed acts which justify the court's assertion of authority over him. See, 1 Stephenson, Conn. Civ. Proc. (2d Ed.) 96, p. 390, citing Nelson v. Miller, 11 Ill.2d 378,143 N.E.2d 673 (1957). It is undisputed that Hall drafted and signed the Letter, addressed to the plaintiff in Connecticut, when he knew that the statements contained therein were untrue. This Center Capital, asserts could be enough to establish that the defendant should reasonably have expected the Letter to have consequences in Connecticut.
Center Capital claims it is confident that a trier of fact will find that the Letter was written for the express purpose of inducing Center Capital to provide money to the Lessees for the purpose of purchasing a large order of equipment and furnishings from Shelby Williams. The defendant Hall, as a regional sales vice-president, clearly stood to gain from such a large order, and had reason to encourage Center Capital to assist the Lessees in the purchase. A trier of fact could determine that Hall knew that Center Capital required the Letter as part of its underwriting, and wrote the Letter to make certain that the Lease was made. This determination is premature, however, at this point. The larger issues of scienter will properly be decided by the trier of fact after a full presentation of evidence. As well, the evidence presented to the court here may well be sufficient to establish that Hall should reasonably have expected the Letter to have consequences in Connecticut. The third tier of Conn. Gen. Stat. 52-59b(a)(3)(B) is satisfied.
Hall derives substantial revenue from interstate commerce. The final requirement for the assertion of personal jurisdiction over a nonresident tortfeasor under Conn. Gen. Stat. 52-59b(a)(3)(B) is that the tortfeasor derive substantial CT Page 5892 revenue from interstate or international commerce. Hall is a regional sales vice-president supervising the states of Maryland, Virginia, Washington, D.C., western New York State, Pennsylvania, West Virginia and New Jersey. Shelby Williams' main manufacturing plant is in Morristown, Tennessee, and its corporate headquarters are in Chicago, Illinois. It seems clear that the sales activities for which Hall is responsible occur in interstate commerce, and that his salary is largely, if not totally, dependent upon sales which occur in interstate commerce.
It should be noted that, in his affidavit supporting his motion to dismiss, Hall does not deny that he derives substantial revenue from interstate commerce. The requirements of Conn. Gen. Stat. 52-59b have been established.
This court's assertion of personal jurisdiction over Hall complies with due process requirements. Once it is determined that the requirements of Connecticut's long-arm statute have been met, the court must consider whether the exercise of personal jurisdiction over the defendant complies with the principles of due process. Due process requires that a nonresident defendant have "certain minimum contacts such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154,90 L.Ed. 95 (1945). A due process analysis looks to two criteria, foreseeability and fairness. U.S. Trust Co. v. Bohart,197 Conn. 34, 41 (1985). In determining foreseeability, the court looks to whether the defendant's conduct with respect to the state asserting jurisdiction was such that he/she should reasonably anticipate being hailed into court in that state. World-Wide Volkswagen Corp. v. Woodson, 44 U.S. 286, 297,100 S.Ct. 559, 62 L.Ed.2d 490 (1980). State courts may assert jurisdiction over nonresident defendants only when minimum contacts exist between the defendant and the forum state. "The nature of these contacts must be such that requiring the defendant to defend in the forum state does not offend `traditional notions of fair play and substantial justice.'" Frazer v. McGowan, 198 Conn. 243, 52 (1986), citing World-Wide Volkswagen Corp. v. Woodson, 44 U.S. 286, 297, 100 S.Ct. 559,62 L.Ed.2d 490 (1980). "All that is required is sufficient contact to make it reasonable and just, according to our traditional notions of fair play and substantial justice, to permit the state to enforce the obligations incurred there." Wedig CT Page 5893 v. Brinster, 1 Conn. App. 123, 129 (1983).
There is no constitutional obstacle to bringing a defendant into Connecticut to defend a claim arising out of tortious conduct committed in Connecticut upon a resident of Connecticut, even if the tort is a wholly isolated event. Buckley v. New York Post Corp., 373 F.2d 175, 179 (2d Cir. 1973). When a claim is specifically related to a defendant's contacts with the forum, the requirements of due process are met if the defendant has purposely directed his activities at residents of the forum, and the litigation results from injuries arising out of those activities. David v. Weitzman677 F. Supp. at 99, quoting Henry Heide, Inc. v. WRH Products Co., Inc., 766 F.2d 105, 108 (3d Cir. 1985). The defendant purposely addressed the Letter and Invoice to Center Capital in Connecticut. Center Capital's damages and the resulting lawsuit, arise out of its reliance upon the misrepresentations contained in the Letter and Invoice. The requirements of due process are therefore satisfied. See, generally, David v. Weizman, supra, [defendants' sole contact with Connecticut was to send into it by mail and telephone fraudulent misrepresentations]; see Brown v. Flowers Industries, Inc., 688 F.2d 328
(5th Cir. 1982), cert. denied, 460 U.S. 1023 (1983); and see Froess v. Bulman, 610 F. Sup. 332, 336-37 (D.R.I. 1984); and McFadden v. National Executive Search, Inc., 354 F. Sup. 1166,1171 (D. Conn. 1973).
The facts before the court demonstrate that Hall and Shelby Williams engaged in purposeful activity which should have led them to reasonably anticipate being hailed into Connecticut's courts. Hall and Shelby Williams admit that Hall wrote the Letter, addressed to Center Capital in Connecticut. The Letter contained statements which were false, and known by Hall to be false. One who causes fraudulent misrepresentations to be communicated to Connecticut, either in person or through their agent, in order to induce a Connecticut corporation to act thereon, cannot claim surprise when called upon to answer in a Connecticut court.
The constitutional due process requirements for exercising personal jurisdiction over Hall are met on the facts before the court.
The defendant Charles Hall, III's Motion to Dismiss is denied. CT Page 5894
LEONARD W. DORSEY, S.T.R.